# STATE OF MICHIGAN

# COURT OF APPEALS

CRAIG GOODMAN,

       Plaintiff-Appellee,

v

JOHN DOE,

       Defendant,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant-Appellant.

UNPUBLISHED
June 21, 2016

No. 323615; 326547
Macomb Circuit Court
LC No. 2012-004471-CK

Before: JANSEN, P.J., and O'CONNELL and RIORDAN, JJ.

PER CURIAM.

In Docket No. 323615, defendant-appellant, State Farm Mutual Automobile Insurance Company (State Farm), appeals as of right the judgment of verdict and the order denying State Farm's motion for judgment notwithstanding the verdict (JNOV) or a new trial. In Docket No. 326547, State Farm appeals as of right the amended the judgment of verdict including case evaluation sanctions and interest. The two appeals stem from the same lower court action and were consolidated in this Court on April 1, 2015.[1] We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. FACTS

This case arises from an incident in which plaintiff's motorcycle collided with the rear bumper of a vehicle, which fled the scene of the accident. Plaintiff hit the rear bumper of the vehicle after the vehicle suddenly braked. The accident occurred during rush hour on I-696. Plaintiff and Monty Kamposh, a witness to the incident, testified at trial that plaintiff could not

---

[1] See *Goodman v Doe*, unpublished order of the Court of Appeals, entered April 1, 2015 (Docket Nos. 323615; 326547).

-1-

have done anything different to avoid the accident and that the driver of the vehicle, known as the uninsured motorist, was entirely at fault. Plaintiff and Kamposh also testified at trial that plaintiff was changing lanes right before the accident.

Plaintiff had a no-fault insurance policy with State Farm covering his motorcycle. The policy included a provision for uninsured motorist (UM) benefits. The policy provided that the insured is entitled to recover UM benefits if the insured is *legally entitled* to recover compensatory damages from the owner or driver of the uninsured vehicle. If the parties do not agree that the insured is legally entitled to recover damages, then the insured must file a lawsuit.

State Farm denied plaintiff's claim for UM benefits, at first stating that there was no evidence that another vehicle was involved in the accident, and later stating that plaintiff was negligent and at fault for the accident. Plaintiff filed the instant action, which proceeded to trial. The jury found in favor of plaintiff and awarded a judgment of $490,000. The trial court later granted State Farm's motion for remittitur and reduced the award to $100,000. The court later amended the judgment to include case evaluation sanctions and interest.

## II. SUMMARY DISPOSITION

State Farm first argues that the trial court erred in denying its motion for summary disposition. We disagree.

State Farm filed the motion for summary disposition under MCR 2.116(C)(8) and (10). However, because it is clear that the trial court considered documents outside of the pleadings in rendering its decision on the motion for summary disposition, we treat the motion as decided under MCR 2.116(C)(10). *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 411; 875 NW2d 242 (2015). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Id*. Summary disposition is proper under MCR 2.116(C)(10) when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id*. "When deciding a motion under MCR 2.116(C)(10), a trial court may consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the nonmoving party." *Id*. "A genuine issue of material fact exists when, viewed in the light most favorable to the nonmoving party, reasonable minds could differ on an issue." *Id*. "[W]here the truth of a material factual assertion of a moving party depends upon a deponent's credibility, there exists a genuine issue for the trier of fact and a motion for summary disposition should not be granted." *White v Taylor Distrib Co, Inc*, 275 Mich App 615, 625; 739 NW2d 132 (2007) (citations omitted), aff'd 482 Mich 136 (2008).

"Uninsured motorist benefits are not required by statute; therefore, the policy language dictates when uninsured motorist benefits will be awarded." *Gentry v Allstate Ins Co*, 208 Mich App 109, 112; 527 NW2d 39 (1994). The insurance policy provided that plaintiff was entitled to UM benefits if plaintiff was legally entitled to compensatory damages from the owner or driver of the uninsured vehicle. Thus, plaintiff was entitled to UM benefits only if he was legally entitled to compensation from the driver or owner of the uninsured vehicle. In Michigan, the violation of a penal statute creates a prima facie case of negligence, and the presumption of negligence may be rebutted by establishing an adequate excuse based on the facts and

-2-

circumstances in the case. *Zeni v Anderson*, 397 Mich 117, 129-130, 143; 243 NW2d 270 (1976). As our Supreme Court has stated:

> [W]hen a court adopts a penal statute as the standard of care in an action for negligence, violation of that statute establishes a prima facie case of negligence, with the determination to be made by the finder of fact whether the party accused of violating the statute has established a legally sufficient excuse. [*Id*. at 143.]

The excuses include, but are not limited to, those outlined in 2 Restatement Torts, 2d, § 288A, pp 32-33. *Id*.

MCL 500.3135(2)(b) provides that, in the context of tort liability for noneconomic loss, "[d]amages shall be assessed on the basis of comparative fault, except that damages shall not be assessed in favor of a party who is more than 50% at fault." Thus, if plaintiff was more than 50% at fault for the accident, he would not be entitled to UM benefits under the policy. State Farm argues that plaintiff was presumed negligent under MCL 257.402(a). MCL 257.402(a) creates a rebuttable presumption of negligence as follows:

> *In any action*, in any court in this state when it is shown by competent evidence, that a vehicle traveling in a certain direction, overtook and struck the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway within this state, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence. This section shall apply, in appropriate cases, to the owner of such first mentioned vehicle and to the employer of its driver or operator. [Emphasis added.]

" 'Under the rear-end collision statute a rebuttable presumption arises that the offending driver is *prima facie* guilty of negligence.' " *White*, 275 Mich App at 621 (citations omitted). In *White*, this Court concluded that the rebuttable presumption arose when a truck hit the plaintiff's vehicle from behind after the driver of the truck passed out. *Id*. at 616-619, 621. "A presumption of negligence 'may be rebutted with a showing of an adequate excuse or justification under the circumstances[.]' " *Id*. at 621 (citation omitted; alteration in original). It is the role of the jury to determine whether the rear-end presumption has been overcome when the evidence is less than clear, positive, and credible. *Id*. at 621-622.

MCL 257.402(a) applied at the summary disposition stage because the evidence at the summary disposition stage indicated that plaintiff's motorcycle overtook and struck the rear end of the uninsured vehicle while proceeding in the same lane. Contrary to plaintiff's argument on appeal, there was no evidence indicating that plaintiff was changing lanes during the incident until plaintiff and Kamposh testified at trial. For example, the traffic crash report provided, "Driver stated that traffic ahead braked suddenly so he applied the brakes to his motorcycle very hard, cycle came out from under the driver and fell over on his leg." Plaintiff's medical records indicate that, immediately after the accident, plaintiff reported suddenly braking on his motorcycle, losing balance, and falling. A few days later, plaintiff reported hitting the back of the uninsured motorist's car after the car "slammed on [its] brakes twice." According to Dr. Jason Sadowski, the physician who treated plaintiff's injuries, EMS personnel informed him that

-3-

plaintiff was on his motorcycle when the car in front of him slammed on its brakes two or three times, leading to contact between the motorcycle and the uninsured vehicle.

Plaintiff testified during his examination under oath that the uninsured motorist was in front of plaintiff in plaintiff's lane during rush hour. He explained:

> Well, I was driving my motorcycle, and there was a car that just basically -- traffic was coming to a -- coming to a stop and it wasn't stopped, though. And this car had probably seven car lengths in between him and just jammed on his brakes a couple times. When he jammed on his brakes, I couldn't stop in time, and the back of my tire hit his car and I lost control.

Kamposh similarly testified during his deposition that there was a car in front of plaintiff's motorcycle, and Kamposh was two cars behind plaintiff. He testified that plaintiff's motorcycle was "less than a car length" from the uninsured vehicle. He explained that the car in front of Kamposh moved to the left. Kamposh testified, "All of a sudden -- the minivan stopped all of a sudden in front and I was a few cars back, and then the bike couldn't stop fast enough and he slid into the car, whatever car it was." He testified that the uninsured vehicle caused the accident when it stopped suddenly. Similarly, in his initial affidavit, Kamposh stated "[t]hat the accident occurred as the result of the automobile suddenly and unexpectedly slamming on its brakes. I observed Mr. Goodman brake hard and attempt to avoid colliding with the automobile. Unfortunately, Mr. Goodman was unable to avoid the collision and struck the rear of the automobile." The evidence presented before summary disposition gave rise to the presumption of negligence in MCL 257.402(a) because the evidence established that plaintiff overtook and hit the rear end of the uninsured motor vehicle while the two vehicles were traveling in the same direction. See MCL 257.402(a).

The trial court also properly found that the sudden emergency doctrine did not excuse plaintiff's violation of the statute. The sudden emergency doctrine has been explained as follows:

> One who suddenly finds himself in a place of danger, and is required to act without time to consider the best means that may be adopted to avoid the impending danger is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence. [*White*, 275 Mich App at 622 (citations and quotation marks omitted).]

The situation must be unusual or unsuspected in order for the sudden emergency doctrine to apply. *Id*. The emergency must not be in clear view for a significant length of time. *Id*. In general, the issue is whether the person raising the sudden emergency doctrine acted as a reasonably prudent person would in the face of the emergency, considering the circumstances of the accident. *Id*.

In *Hill v Wilson*, 209 Mich App 356, 357; 531 NW2d 744 (1995), the plaintiff sustained injuries after his motorcycle hit the rear of the defendant's car. The accident occurred during heavy traffic at approximately 4:30 p.m. on a workday. *Id*. A family of ducks crossed the road

in front of the defendant's car and the car in front of the defendant's car. *Id*. The plaintiff attempted to pass the defendant's car, but was unable to pass because of oncoming traffic. *Id*. When the plaintiff reentered the lane, the defendant slowed down or stopped to avoiding hitting the car in front of her and the ducks. *Id*. at 357-358. According to the plaintiff, he was approximately three "bike lengths" behind the defendant when the defendant braked. *Id*. at 358. The plaintiff was unable to stop and hit the rear bumper of the defendant's car. *Id*.

This Court concluded, "Far from being a sudden emergency, we find the phenomenon of motorists being forced to make unanticipated stops is a common occurrence during rush hour." *Hill*, 209 Mich App at 358. This Court held that the plaintiff should have reasonably expected sudden stops since the parties were driving in rush-hour traffic. *Id*. at 360-361 (citations omitted). This Court held that the defendant acted properly in slowing down or braking for an object that entered the road. *Id*. at 361. The exact reason why the defendant stopped was irrelevant since the plaintiff should have expected that the defendant would stop because the accident occurred in heavy traffic. *Id*. Thus, this Court held that summary disposition in favor of the defendant was proper. *Id*.

Similarly, in this case, plaintiff could not avail himself to the sudden emergency doctrine. *Hill* makes clear that the sudden emergency doctrine does not apply with regard to unanticipated stops during rush hour. It is undisputed that the accident occurred on a freeway during evening rush hour. Thus, although the trial court did not exclude the possibility that plaintiff's conduct was excused for other reasons, plaintiff could not invoke the sudden emergency doctrine as an excuse for hitting the rear end of the uninsured vehicle because sudden braking was to be expected in this context. See *Hill*, 209 Mich App at 358.

However, *Hill* does not stand for the proposition that the driver of a vehicle that is rear-ended can never be negligent. Instead, as the trial court properly recognized, there was testimony that the driver of the uninsured vehicle was negligent. Kamposh testified that the uninsured vehicle caused the accident when it stopped suddenly. Kamposh clarified in a supplemental affidavit that "[t]here was absolutely no reason for the vehicle driving in front of Mr. Goodman to unexpectedly and suddenly slam on his/her brakes. In fact, I can only guess this type of erratic and malicious behavior was done in an effort to harass Mr. Goodman." Kamposh stated that the uninsured motorist was the sole cause of the accident and stated that the uninsured motorist did not brake because of traffic conditions, weather conditions, or any object on the road. This situation differs from that in *Hill* as the evidence indicated that the uninsured motorist stopped for absolutely no reason, drove in an erratic manner, and may have intended to harass plaintiff. Although a plaintiff must anticipate sudden braking during rush hour traffic, *Hill* does not stand for the proposition that he is required to anticipate erratic driving. The evidence, therefore, created a genuine issue of material fact with regard to whether plaintiff's violation of the statute was excused for reasons other than sudden emergency and whether the uninsured motorist was at fault because the uninsured motorist braked for no reason and may have even braked in an attempt to harass plaintiff. The trial court correctly concluded that it was the role of the trier of fact to determine whether plaintiff was negligent and to apportion fault between the parties. See *White*, 275 Mich App at 621-622.

## III. TRIAL TESTIMONY

State Farm next argues that the trial court abused its discretion when it permitted plaintiff to present evidence at trial regarding a sudden emergency. State Farm argues that the testimony that plaintiff presented at trial regarding the fact that the uninsured motorist stopped suddenly and unexpectedly constituted an invocation of the sudden emergency doctrine, and the fact that the court permitted the testimony contradicted its prior order that the sudden emergency doctrine did not apply. We disagree.

"A trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo[.]" *Albro v Drayer*, 303 Mich App 758, 760; 846 NW2d 70 (2014). "An abuse of discretion occurs when the court's decision results in an outcome that falls outside the range of principled outcomes." *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 528; 872 NW2d 412 (2015).

"A court has the basic responsibility of enforcing its own orders . . . ." *Weathervane Window, Inc v White Lake Constr Co*, 192 Mich App 316, 322; 480 NW2d 337 (1991). However, the trial court did not fail to enforce its order because plaintiff did not present evidence that was relevant only to the issue of sudden emergency. At trial, plaintiff testified that he attempted to change lanes when the uninsured driver sped up, preventing him from changing lanes. Once the uninsured vehicle got ahead of plaintiff's motorcycle, plaintiff started to change lanes. The uninsured motorist then slammed on his brakes for no reason, causing plaintiff to hit the rear of the vehicle. Similarly, Kamposh testified that he saw the uninsured motorist brake very fast while plaintiff attempted to change lanes. According to Kamposh, plaintiff had a safe distance in which to merge behind the uninsured vehicle, and plaintiff "was doing [the] proper thing as a motorcycle." Both men testified that the uninsured motorist was the sole cause of the accident. Both men also testified that plaintiff could not have done anything different to avoid the accident, and Kamposh testified that plaintiff was driving in a reasonable manner. At no point during trial did plaintiff raise the sudden emergency defense. Instead, plaintiff sought to establish that the other driver was negligent and that the other driver's negligence caused the accident.

The evidence presented at trial was that the uninsured motorist was speeding up and braking suddenly for no reason, and the uninsured motorist's actions caused the accident. State Farm's position that the court should have prohibited plaintiff from presenting evidence that the vehicle in front of him suddenly stopped would have prevented plaintiff from explaining what occurred during the accident in order to establish that he was not negligent and that the uninsured motorist was at fault. This would have been at odds with the trial court's decision that there was a question of fact regarding liability. Accordingly, the trial court did not err in permitting plaintiff to present testimony regarding what occurred during the accident. See *Weathervane Window Inc*, 192 Mich App at 322.

## IV. JURY INSTRUCTIONS

State Farm argues that the trial court erred when it instructed the jury regarding excuse for violation of a statute in spite of its previous ruling that the sudden emergency doctrine did not

apply in this case and the fact that plaintiff failed to submit other evidence regarding excuse. We disagree.

We review de novo a preserved instructional error. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 626; 792 NW2d 344 (2010). We consider the jury instructions as a whole to determine whether the instructions "adequately present the theories of the parties and the applicable law." *Id*. at 626-627. " '[A] verdict should not be set aside unless failure to do so would be inconsistent with substantial justice. Reversal is not warranted when an instructional error does not affect the outcome of the trial.' " *Id*. at 627 (citation omitted; alteration in original).

M Civ JI 12.01 provides that, if the jury finds that a plaintiff or defendant violated a certain statute before or during the incident, then the jury may infer that the plaintiff or defendant was negligent. The jury must then determine whether the negligence was a proximate cause of the incident. M Civ JI 12.01. M Civ JI 12.02 provides that if the jury finds that the plaintiff or defendant used ordinary care and was nevertheless unable to avoid violation of the statute because of a certain excuse, then the violation is excused. The jury instruction further explains that if the jury finds that the plaintiff or defendant violated the statute and the violation is not excused, then the jury must determine whether the violation was the proximate cause of the occurrence. M Civ JI 12.02. The comment associated with M Civ JI 12.02 cites 2 Restatement Torts, 2d, § 288A, pp 32-33, with regard to the five categories of excused violation of a statute. M Civ JI 12.02. The five categories of excused violation include:

(a) the violation is reasonable because of the actor's incapacity;

(b) he neither knows nor should know of the occasion for compliance;

(c) he is unable after reasonable diligence or care to comply;

(d) he is confronted by an emergency not due to his own misconduct;

(e) compliance would involve a greater risk of harm to the actor or to others. [Restatement, § 288A.]

The notes on use for the jury instruction provide that the instruction should be given directly after M Civ JI 12.01 "and only where the evidence would support a finding that a legal excuse existed." M Civ JI 12.02.

Although the trial court concluded in its opinion and order regarding State Farm's motion for summary disposition that the sudden emergency doctrine did not apply, the court did not preclude plaintiff from arguing that any other excuses applied to rebut the presumption of negligence. The trial court instructed the jury as follows:

We have a state statute which provided that, quote, in any action, in any court in this state when it's shown by competent evidence that a vehicle traveling in a certain direction overtook and struck the rear end of another vehicle proceeding in the same direction or lawfully standing upon any highway within this state, the driver or operator of such first mentioned vehicle shall be deemed

-7-

prima facia [sic] guilty of negligence, end quote.  If you find that the plaintiff violated this statute before or at time of the occurrence, you may infer that the plaintiff was negligent.  *However, if you find that the plaintiff used ordinary care and was still unable to avoid collision because of the uninsured, because the uninsured motorist unexpectantly slammed on his or her brakes causing the accident or that the plaintiff used reasonable care under the circumstances, then plaintiff's violation is excused.*  If you find that plaintiff violated the statute and the violation was not excused, then you must decide whether such violation was with a proximate cause of the occurrence.  [Emphasis added.]

The testimony at trial provided ample evidence that plaintiff was unable, after reasonable diligence or care, to comply with MCL 257.402(a) due to the negligent conduct of the uninsured motorist.  As discussed above, plaintiff testified at trial that the uninsured motorist sped up, preventing plaintiff from changing lanes, and that, once the uninsured motorist passed plaintiff, plaintiff started to change lanes.  The uninsured motorist then slammed on his brakes for no reason, causing plaintiff to hit the rear of the vehicle.  Kamposh also testified that he saw the same factual scenario occur.  According to Kamposh, plaintiff had a safe distance in which to merge behind the uninsured vehicle, and plaintiff could not have done anything to avoid the accident.  Both men testified that the uninsured motorist was the sole cause of the accident.  This testimony supported a finding that, assuming plaintiff violated MCL 257.402(a), plaintiff was unable to comply with the statute despite his reasonable diligence or care.  Contrary to State Farm's argument, the testimony did not focus on the fact that plaintiff was confronted with an emergency preventing his compliance with the statute.  Instead, the testimony indicated that plaintiff hit the rear of the uninsured vehicle due to the erratic driving of the uninsured motorist.  See Restatement, § 288A.  This evidence presented an excuse for violation of MCL 257.402(a).  Accordingly, the trial court properly instructed the jury under M Civ JI 12.02 because there was a relevant excuse, other than sudden emergency, that applied to this situation, and the trial court properly instructed the jury that it could consider the unexpected braking of the uninsured motorist in causing the accident, in spite of plaintiff's reasonable conduct, as an excuse for violation of the statute.

## V.  MOTION FOR JNOV OR A NEW TRIAL

State Farm next argues that the trial court erred in denying its motion for JNOV or a new trial.  We disagree.

We review de novo a trial court's decision on a motion for judgment notwithstanding the verdict.  *Taylor v Kent Radiology, PC*, 286 Mich App 490, 499; 780 NW2d 900 (2009).  We review for an abuse of discretion a trial court's decision on a motion for a new trial.  See *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 531; 866 NW2d 817 (2014).  " 'A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes.' "  *Id*. (citation omitted).

A motion for JNOV "essentially challenges to the sufficiency of the evidence in support of a jury verdict in a civil case."  *Taylor*, 286 Mich App at 499.  This Court reviews " 'the evidence and all legitimate inferences in the light most favorable to the nonmoving party.' "  *Id*. (citation omitted).  " 'Only if the evidence so viewed fails to establish a claim as a matter of law,

-8-

should the motion be granted.' " *Id*. (citation omitted). "If reasonable persons, after reviewing the evidence in the light most favorable to the nonmoving party, could honestly reach different conclusions about whether the nonmoving party established his or her claim, then the question is for the jury." *Id*. at 500.

The trial court did not err in denying the motion for JNOV or a new trial. First, with regard to the motion for JNOV, although the trial court determined that plaintiff could not invoke the sudden emergency doctrine as an excuse for violation of MCL 257.402(a), the court did not preclude plaintiff from presenting evidence that his conduct was excused on other grounds. As discussed above, plaintiff provided ample evidence that he was unable, after reasonable diligence or care, to comply with MCL 257.402(a) due to the negligence of the uninsured motorist. See Restatement, § 288A. Thus, plaintiff presented evidence other than that designed to invoke a sudden emergency defense, and the trial court properly denied the motion. Furthermore, it was the role of the jury to apportion fault between plaintiff and the uninsured motorist based on the facts and circumstances in this case. Contrary to State Farm's argument, plaintiff presented evidence that he was less than 50% at fault in the accident because both plaintiff and Kamposh testified that the other driver suddenly braked for no reason, the uninsured motorist's conduct caused the accident, and there was nothing that plaintiff could have done to avoid the accident. Defense counsel thoroughly cross-examined both witnesses regarding the discrepancies between their trial testimony and their pretrial testimony and statements, and it was the role of the jury to determine the credibility of the witnesses and decide whether plaintiff was less than 50% at fault in the accident. Plaintiff presented sufficient evidence to support a jury verdict in his favor. Therefore, the court properly denied the motion for JNOV. See *Taylor*, 286 Mich App at 499-500.

Finally, State Farm contends that the trial court should have granted the motion for JNOV because trial court erroneously instructed the jury pursuant to M Civ JI 12.02. However, as explained above, the trial court properly instructed the jury under M Civ JI 12.02. There was adequate evidence to support a finding that plaintiff's conduct was excused. Therefore, the trial court did not err when it denied the motion for JNOV. See *Taylor*, 286 Mich App at 499-500.

With regard to its motion for a new trial, State Farm argues that the fact that the trial court permitted plaintiff to present proof of damages in excess of the policy limit resulted in an excessive verdict that was influenced by passion or prejudice. MCR 2.611(A)(1) provides:

A new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:

(a) Irregularity in the proceedings of the court, jury, or prevailing party, or an order of the court or abuse of discretion which denied the moving party a fair trial.

(b) Misconduct of the jury or of the prevailing party.

*(c) Excessive or inadequate damages appearing to have been influenced by passion or prejudice.*

(d) A verdict clearly or grossly inadequate or excessive.

(e) A verdict or decision against the great weight of the evidence or contrary to law.

(f) Material evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at trial.

(g) Error of law occurring in the proceedings, or mistake of fact by the court. [Emphasis added.]

State Farm fails to show that the jury verdict was the result of passion or prejudice, and, to the extent that the verdict was excessive, the court resolved the issue by granting remittitur. State Farm's argument that the jury verdict was the result of passion and prejudice is limited to the amount awarded. Even assuming that the award was excessive, the trial court reduced the judgment to the $100,000 policy limit. State Farm fails to explain how the jury verdict nevertheless resulted in substantial prejudice in spite of the fact that the court reduced the judgment. Therefore, to the extent that the jury award was excessive, State Farm's material rights were not substantially affected. See MCR 2.611(A)(1).

State Farm also contends that certain portions of Deborah Franklin's testimony inflamed the passions of the jury and prejudiced it. Franklin is the State Farm agent who was in charge of handling plaintiff's claim. State Farm points out that Franklin's testimony regarding the fact that plaintiff paid for his policy was not relevant to the issues in the case because the fact that plaintiff's policy was in effect was not in dispute. State Farm fails to show how the testimony that plaintiff paid his policy inflamed the passions of the jury and prejudiced State Farm. As State Farm notes, all of the parties agreed that plaintiff paid for his policy and that the policy was in effect. Therefore, there is no indication that testimony to this effect inflamed the passions of the jury such that State Farm was prejudiced. See MCR 2.611(A)(1).

Finally, State Farm argues that the trial court should have granted a new trial considering that plaintiff presented evidence regarding sudden emergency and the trial court improperly instructed the jury under M Civ JI 12.02. As discussed above, the trial court did not err in permitting plaintiff to present evidence regarding the uninsured motorist's sudden braking, and the trial court did not err in instructing the jury pursuant to M Civ JI 12.02. Therefore, the trial court properly denied the motion for JNOV or a new trial.

VI. ATTORNEY FEES

State Farm next argues that the trial court awarded attorney fees at an excessive and unsubstantiated hourly rate. We disagree.

" 'A trial court's decision whether to grant case-evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo.' " *Van Elslander v Thomas Sebold & Assoc, Inc*, 297 Mich App 204, 211; 823 NW2d 843 (2012) (citation omitted). " 'We review for an abuse of discretion a trial court's award of attorney fees and costs. An abuse

-10-

of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes.' " *Id*. (citation omitted).

The prevailing party in a civil case generally cannot recover attorney fees from the losing party as costs, unless a statute or court rule provides otherwise. *Van Elslander*, 297 Mich App at 212. MCR 2.403(O)(1) provides:

> If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

Costs include "a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation." MCR 2.403(O)(6)(b). The liable party " 'is only liable for those fees that accrued after the case evaluation as a consequence of defending against the rejecting plaintiff's theories of liability and damage claims.' " *Van Elslander*, 297 Mich App at 214 (citation omitted).

The party requesting attorney fees has the burden to prove that the requested fees are reasonable. *Van Elslander*, 297 Mich App at 228. The Michigan Supreme Court has outlined six factors to be utilized in determining a reasonable attorney fee, including: "(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982). The factors outlined in *Wood* overlap with the factors outlined in MRPC 1.5(a), which provides, in part, that the factors that are to be considered in determining whether a fee is reasonable include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

-11-

(8) whether the fee is fixed or contingent.[2]

Trial courts routinely consider the data presented in surveys, including the Economics of the Law Practice Surveys. *Van Elslander*, 297 Mich App at 229. The court must utilize the following methodology in conducting its analysis of the attorney fee award:

> "[A] trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services, i.e., factor 3 under MRPC 1.5(a). In determining this number, the court should use reliable surveys or other credible evidence of the legal market. This number should be multiplied by the reasonable number of hours expended in the case (factor 1 under MRPC 1.5[a] and factor 2 under *Wood*). The number produced by this calculation should serve as the starting point for calculating a reasonable attorney fee. . . . Thereafter, the court should consider the remaining *Wood*/MRPC factors to determine whether an up or down adjustment is appropriate. And, in order to aid appellate review, a trial court should briefly discuss its view of the remaining factors." [*Id.* at 229-230, quoting *Smith v Khouri*, 481 Mich 519, 530-531; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.).]

With regard to determining the fee customarily charged,

> "[t]he reasonable hourly rate represents the fee customarily charged in the locality for similar legal services, which is reflected by the market rate for the attorney's work. 'The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.' " [*Van Elslander*, 297 Mich App at 230, quoting *Smith*, 481 Mich at 531 (opinion by TAYLOR, C.J.) (citation omitted).]

The party requesting attorney fees must produce evidence that the rates are consistent with the prevailing rates in the community for similar legal services of lawyers with reasonably comparable skills, experience, and reputation. *Van Elslander*, 297 Mich App at 230. The

---

[2] We note that the Michigan Supreme Court recently discussed *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008) in *Pirgu v United Servs Auto Ass'n*, ___ Mich ___; ___ NW2d ___ (2016) (Docket No. 150834); slip op at 6-7, 9-10, 13. In that case, the Court distilled the *Wood*/MRPC 1.5(a) factors into one list in order to aid the trial courts in analyzing the issue. *Id.* at ___; slip op at 13. The list is comprised of the following eight factors: "the experience, reputation, and ability of the lawyer or lawyers performing the services," "the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," "the amount in question and the results obtained," "the expenses incurred," "the nature and length of the professional relationship with the client," "the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer," "the time limitations imposed by the client or by the circumstances," and "whether the fee is fixed or contingent." *Id.*

customary fee can be established through testimony or data in surveys or other reports. *Id*. However, the party requesting the attorney fees cannot merely present anecdotal statements to establish the customary fee. *Id*. The parties and the court should consider the most relevant data available. *Id*. The party requesting attorney fees must provide detailed billing records. *Id*. at 231. The court multiplies the hourly rate by the reasonable hours billed to produce a baseline attorney fee award, which the court may increase or decrease after considering the other factors. *Id*. The trial court may grant an upward departure " 'for the truly exceptional lawyer.' " *Id*. (citation omitted). If the other party contests the reasonableness of the rate or the hours, the opposing party is entitled to an evidentiary hearing. *Id*.

The parties do not dispute that plaintiff is entitled to attorney fees under MCR 2.403(O)(1). Additionally, State Farm does not challenge the trial court's finding regarding reasonable hours. Instead, State Farm's sole argument is that the trial court imposed attorney fees on the basis of an unreasonable and unsubstantiated hourly rate. Plaintiff initially requested in his motion to amend the judgment attorney fees at a rate of $275 an hour for attorney Andrew Paluda, and $200 an hour for attorney Stacey Sanford, because these were the rates the attorneys routinely charged. Plaintiff stated in a supplemental motion that counsel for the parties agreed to a rate of $300 an hour. However, at the evidentiary hearing, plaintiff presented a request for, and evidence indicating, that his attorneys were entitled to fees at a higher rate, and the trial court ultimately awarded attorney fees for Paluda at a rate of $575 an hour, and for Sanford at a rate of $341 an hour.

State Farm contends that the trial court erred in failing to determine a customary fee rate for both attorneys. However, the record reflects that the court determined the customary rate by considering the market rate for each attorney's work. The trial court determined the reasonable hourly rates for the two attorneys by considering the State Bar of Michigan's 2014 Economics of Law Practice in Michigan Report. The trial court considered the mean, median, 25th percentile, 75th percentile, and 95th percentile bill rates for personal injury plaintiff's attorneys in the area where plaintiff's attorneys worked, as well as in Macomb County. The 2014 Economics of Law Practice and Management in Michigan Report established that the mean rate for a personal injury plaintiff's attorney in Macomb County was $341 an hour. The trial court's opinion and order reflects that the court considered this rate as the customary rate for similar legal services in the locality. *Van Elslander*, 297 Mich App at 230-231. The court considered the average fee customarily charged in the county where the court was located for similar legal services when it determined the average fee for plaintiff's personal injury attorneys in Macomb County. See *id*. at 229-230. Therefore, the court properly considered a reliable survey of the relevant legal market to determine the customary fee for the attorneys' services. See *id*.

The trial court did not err in determining that the reasonable rate for Sanford was $341 an hour. The court determined that the proper rate for Sanford was $341 based on the 2014 Economics of Law Practice and Management in Michigan Report. The court determined that the remaining factors outlined in *Wood* and MRPC 1.5(a) did not warrant an upward adjustment for Sanford. State Farm contends that the trial court improperly relied on anecdotal evidence to determine a reasonable billing rate for Sanford. Andrew Smith, a civil litigation trial attorney with experience in personal injury cases and breach of contract cases, testified that a rate of at least $400 an hour, if not $600 an hour, would be appropriate for Sanford's legal services. The trial court discussed Smith's testimony in rendering its decision. However, it is clear that

-13-

Smith's testimony did not affect the trial court's decision because the trial court awarded Sanford attorney fees at the customary rate, rather than at the rate suggested by Smith. Thus, the trial court did not err in awarding attorney fees to Sanford at a rate of $341 an hour. See *Van Elslander*, 297 Mich App at 229-230.

The trial court departed from the fee customarily charged in the locality for similar legal services with regard to Paluda. In determining the appropriate fee award for Paluda, the court considered the customary fee in the area for similar legal services, as well as the remaining *Wood*/MRPC 1.5(a) factors. In addition, the court also considered the testimony of plaintiff's expert witnesses. The court considered the testimony of Robert Gittleman, a trial attorney handling dental malpractice, medical malpractice, automobile negligence, and general negligence cases. Gittleman based his opinions on his years of experience in trial and appellate practice with regard to attorney fees as case evaluation sanctions. Gittleman was the plaintiff's attorney in *Smith*, a leading case on the issue of attorney fees. See *Smith*, 481 Mich at 521. Gittleman believed that Paluda "is a well-respected, competent trial advocate." Gittleman testified that Paluda is "one of the top defense lawyers that [he's] ever come in contact with." Gittleman rated Paluda "in the top two or three percent" as compared with other attorneys Gittleman had come across from a wide array of legal practices. Gittleman believed that a fair rate would be between $500 and $600 an hour.

State Farm argues that Gittleman was biased against it because it is an insurance company. Gittleman stated during his deposition, "[T]he whole function of case evaluation sanctions has been to foster settlements so that the courts are not clogged up by some recalcitrant carriers that have a policy of rejecting everything and trying everything and making life difficult." State Farm also contends that Gittleman's testimony was biased because Gittleman testified solely because he wished to raise Paluda's rate. Gittleman testified that he informed Paluda that he should increase the rate in the attorney fee request and that, if Paluda did not increase the rate, Gittleman would "do it for [him] in this testimony." However, Gittleman based his opinion regarding the reasonable hourly rate on his years of experience with regard to attorney fee issues and his familiarity with Paluda, rather than on any animosity toward insurance companies or desire to ensure that Paluda earned a higher rate. Gittleman's testimony was reflective of his belief that a reasonable rate for Paluda was higher than $275. Therefore, the trial court did not err in considering his testimony.

Bob Tyler, a plaintiff's attorney practicing in the areas of dental malpractice, medical malpractice, and products liability, testified on behalf of Paluda during the hearing. Tyler explained that Paluda is in the "upper echelon of lawyers within our area of concentration," and is "highly regarded." Tyler testified that Paluda is "in the top ten percent" of attorneys. He testified that Paluda is in the top 95th percentile. He explained that an attorney fee rate should not be limited to the Michigan State Bar survey as a practice is often not confined to one geographical location. He noted that cases involving uninsured motorist benefits can become complicated and require a higher skill level. He estimated that a proper rate for Paluda's services would be in the range of $500 to $600 an hour. He based his recommendation on Paluda's skill level, his familiarity with the issue of case evaluation sanctions, and the 2014 Economics of Law Practice survey rates for attorneys in the 95th percentile.

Jeffrey Cook encountered plaintiff while working on automobile negligence cases and more recently encountered plaintiff while working on dental malpractice cases. Cook opined that Paluda is "an elite attorney in the 95th percentile." He explained that he based his decision on his experience handling cases with Paluda, the fact that Paluda is a "Super Lawyer," the fact that Paluda practices in the area of medical malpractice, which can be useful in automobile negligence cases, and the fact that Paluda handles litigation on behalf of both plaintiffs and defendants. He explained that an attorney may request a lower award of attorney fees in order to resolve the case, but, if the award of fees is contested, then the attorney may request a higher award more akin to what the attorney's services are actually worth. He testified that the fact that fraud was an issue in this case made the case harder. He acknowledged that an attorney fee award is not to be a windfall. He opined that $575 was a reasonable rate.

The trial court did not err in considering the testimony of Gittleman, Tyler, and Cook, and the testimony of the witnesses established that the proper hourly rate for Paluda's services was between $500 and $600 an hour. State Farm contends that the testimony amounted to "little more than puffery" on behalf of Paluda. The record reveals that the witnesses based their opinions regarding the proper hourly rate on their knowledge of Paluda, their knowledge of the issues involved in an automobile no-fault case, their knowledge of Paluda's practice of law, their knowledge of the result in this case in plaintiff's favor, and their knowledge of Paluda's reputation. This testimony was relevant in order for the court to determine whether an upward departure was warranted. See *Van Elslander*, 297 Mich App at 228-229.

State Farm also contends that the trial court improperly considered its claim of fraud in determining that the case was more complex and difficult. Contrary to State Farm's assertion that no evidence supported this finding, plaintiff presented expert testimony that the fact that there was an allegation of fraud in the case made the case more difficult. State Farm argues that the case did not involve medical knowledge or accident reconstruction. However, the trial court explained that its determination with regard to Paluda was based on "the credible testimony of plaintiff's experts regarding Paluda's experience and skill, the evidence introduced at the evidentiary hearing, the complexity of this case and reasonable rates in the area." The court further explained that it was departing from the average rate because of "Paluda's professional standing and experience, the complexity of the instant matter, and the superb results achieved." Although there was testimony at the evidentiary hearing that cases involving medical knowledge and accident reconstruction are more complex, the trial court did not state that an upward deviation was proper because the case involved medical knowledge or accident reconstruction.

Additionally, State Farm contends that this was a straight-forward case and did not take up much of the attorneys' time. However, the record reveals that this was a highly contested case involving a jury trial, pretrial litigation, and posttrial litigation. The case involved multiple issues of fact and law. The trial court did not err in considering the complexity of the case in rendering its decision. Finally, State Farm points out that plaintiff's attorneys initially requested a much lower rate. Although plaintiff's attorneys initially requested fees at a lower rate, Cook explained that an attorney may request a lower award of attorney fees in order to resolve the case, but, if the attorney fee award is contested, then the attorney may request a higher award more akin to what the attorney's services are actually worth. The issue before the trial court was to determine a reasonable attorney fee award. Therefore, the trial court did not err with regard to its determination of the attorney fee awards for Paluda and Sanford.

-15-

## VII. COSTS

State Farm next argues that the trial court incorrectly awarded certain costs to plaintiff for items that were not recoverable in a civil case. We disagree.

We review a trial court's ruling on a motion to tax costs for an abuse of discretion. See *Guerrero v Smith*, 280 Mich App 647, 670; 761 NW2d 723 (2008). The issue whether a particular expense is a taxable cost is a question of law, which we review de novo. *Id*.

Plaintiff was awarded $8,489.96 in costs as part of the case evaluation sanctions against State Farm. The court did not analyze each item in the bill of costs. Instead, the court stated that it had reviewed the updated bill of costs and found, after careful review, that plaintiff was entitled to recover the expenses as taxable costs. MCR 2.403(O)(6)(a) provides that the actual costs associated with case evaluation sanctions includes "those costs taxable in any civil action." " 'Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action.' " *Guerrero*, 280 Mich App at 670 (citations omitted). The prevailing party cannot recover costs without statutory authority. *Id*. "[C]osts shall be allowed as a matter of course to the prevailing party. *This does not mean, of course, that every expense incurred by the prevailing party in connection with the proceeding may be recovered against the opposing party*." *Id*. at 671 (citation and quotation marks omitted; alteration in original). MCR 2.625(F)(2) provides that the party entitled to costs must present to the clerk of the court a bill of costs conforming with MCR 2.625(G). MCR 2.625(G) provides:

> (1) Each item claimed in the bill of costs, except fees of officers for services rendered, must be specified particularly.
>
> (2) The bill of costs must be verified and must contain a statement that
>
> (a) each item of cost or disbursement claimed is correct and has been necessarily incurred in the action, and
>
> (b) the services for which fees have been charged were actually performed.
>
> (3) If witness fees are claimed, an affidavit in support of the bill of costs must state the distance traveled and the days actually attended. If fees are claimed for a party as a witness, the affidavit must state that the party actually testified as a witness on the days listed.

State Farm first argues that plaintiff improperly charged witness fees without affidavits stating the distances travelled and the days the witnesses were at trial. Plaintiff failed to provide affidavits in support of the witness fees in violation of MCR 2.625(G)(3). Thus, plaintiff failed to present sufficient evidence establishing costs for the witness fees. See *id*. Therefore, the court erred in awarding these fees.

In addition, State Farm argues that plaintiff sought to tax subpoena fees for subpoenas that were issued for the police report, for records from Pulmonary Medicine Association,

Advanced Physical Therapy, Stasi Chiropractic, HOV Services, Dwight Orthopedic, Sprint PCS, and to Kamposh. Plaintiff requested subpoena fees with regard to the above persons and entities pursuant to MCL 600.2559(g) and (o). A prevailing party may recover costs for service of a trial subpoena. *Van Elslander*, 297 Mich App at 225. However, "subpoena fees are taxable costs only as they pertain to witnesses." *Id*. at 226. MCL 600.2552(1) provides, in part:

> A witness who attends any action or proceeding pending in a court of record shall be paid a witness fee of $12.00 for each day and $6.00 for each half day, or may be paid for his or her loss of working time but not more than $15.00 for each day shall be taxable as costs as his or her witness fee.

MCL 600.2559(1) provides, in part:

> Except as provided in subsections (2) and (8), the following is the schedule of fees allowed for process or papers served out of a court in this state by a person authorized under this act or supreme court rule to serve process:
>
> * * *
>
> (g) For a subpoena on discovery, *for each person served*, $23.00 plus mileage.
>
> * * *
>
> (o) For service by mail, $10.00 plus the actual cost of postage. [Emphasis added.]

MCL 600.2555 provides,

> A person authorized by this act or supreme court rule to serve process or a paper issued by or filed with a court in this state is only entitled to traveling fees for the service from the place where the court that issued or filed the process or paper is located to the place of service, not to exceed 75 miles each way.

The only subpoena fee that was permissible was the subpoena fee that pertained to Kamposh. See *Van Elslander*, 297 Mich App at 225-226. With regard to Kamposh, plaintiff failed to provide a basis for the $36.48 in costs alleged. See MCL 600.2559. Therefore, the court erred in granting the subpoena fees.

State Farm next argues that the trial court improperly assessed costs for trial attendance more than once and for traveling costs. Plaintiff cited MCL 600.2441(2)(a), which provides for costs with regard to proceedings *before* trial, rather than the trial proceedings. In contrast, MCL 600.2441(2)(c) provides that a party may tax costs "[f]or the trial of the action or proceeding, $150.00." MCL 600.2441(2)(c) provides for a one-time fee and does not provide for an award for parking costs or costs for more than one attorney. Thus, the court erred in assessing costs in excess of $150 for the trial.

State Farm next argues that the trial court erred in granting costs associated with creating a trial exhibit. Plaintiff cited MCL 600.2441(2)(c), which permits $150 in costs for the trial. MCL 600.2441(2)(c). MCL 600.2441(2)(c) only provides for a one-time cost of $150 for the trial. There is no indication that the statute permits more than $150 for the trial, and it does not permit costs for trial exhibits. See *id*. Furthermore, as State Farm notes, this Court has held that a prevailing party cannot recover the costs of exhibit enlargement. *Guererro*, 280 Mich App at 672-673. Similarly, plaintiff could not recover the costs for magnets and an aerial map or board under MCL 600.2441(2)(c) or any other statute. See *id*.

Next, State Farm contends that plaintiff could not seek costs that were associated with travelling to and lodging in Grand Rapids in order to obtain the deposition of a woman named Nicole Blowers. Plaintiff sought costs for lodging and traveling for the deposition of Blowers pursuant to MCL 600.2441(1). MCL 600.2441(1) provides:

> In all civil actions or special proceedings in the supreme court, whether heard as an original proceeding or on appeal, the following amounts shall be allowed as costs in addition to other costs unless the court otherwise directs:
>
> (a) On motions, $20.00.
>
> (b) On calendar causes and those given an early hearing, $50.00.

MCL 600.2441(1) does not permit costs associated with traveling or lodging in order to obtain a deposition. Therefore, the court erred in granting the costs. See *id*.

State Farm also argues that the court erred in granting costs associated with fees paid for case evaluation. Plaintiff requested case evaluation fees and case evaluation adjournment fees pursuant to MCR 2.403(H). However, MCR 2.403(H) does not permit a prevailing party to tax costs associated with case evaluation. See MCR 2.403(H). This Court has also held that case evaluation fees are not taxable as costs. *Guerrero*, 280 Mich App at 674. Therefore, the court erred in including the case evaluation fees and adjournment fees as taxable costs. See *id*.

State Farm next contends that the trial court erred in permitting plaintiff to tax as costs the fees related to depositions that were never read into evidence at trial and the production of medical records. Specifically, State Farm takes issue with the request for costs associated with depositions of plaintiff, Blowers, Franklin, a woman named Amy Jayne, and Kamposh. Plaintiff sought transcript fees associated with the deposition transcripts of plaintiff, Franklin, Blowers, and Kamposh under MCL 600.2549. Additionally, plaintiff sought court reporter fees for Franklin's deposition, Blowers's deposition, and Jayne's deposition pursuant to MCL 600.2549 and MCL 600.8631(2). MCL 600.2549 provides:

> Reasonable and actual fees paid for depositions of witnesses filed in any clerk's office and for the certified copies of documents or papers recorded or filed in any public office shall be allowed in the taxation of costs only if, at the trial or when damages were assessed, the depositions were read in evidence, except for impeachment purposes, or the documents or papers were necessarily used.

MCL 600.8631 provides:

> (1) A district court recorder or reporter shall be entitled to receive for a transcript ordered by any person the same fees as provided by law for circuit court reporters or recorders. For a transcript ordered by the district judge or a circuit judge, recorders or reporters shall be entitled to receive from the district control unit the same compensation.

> (2) The amount of a recorder's or reporter's fees paid shall be recoverable as a part of the taxable costs by the prevailing party in a motion or on appeal.

The trial court improperly taxed costs for the transcript fees and court reporter fees pursuant to MCL 600.2549 and MCL 600.8631. MCL 600.8631(2) provides that the prevailing party may request reporter fees with regard to district court recorders or reporters. The statute applies in the context of a district court proceeding. MCL 600.2549 provides that fees for depositions of witnesses may be taxed as costs if the depositions were read into evidence at trial or when damages were assessed. The challenged depositions were not read into evidence at trial. Furthermore, the record does not indicate that the depositions were ever separately filed in the clerk's office. See *Portelli v IR Constr Prod Co, Inc*, 218 Mich App 591, 607; 554 NW2d 591 (1996). Thus, the court erred in granting these costs.

Finally, State Farm argues that plaintiff improperly sought to tax costs associated with obtaining medical records and other documents. Plaintiff sought to tax costs relating to medical records for Michigan Orthopedic Institute under MCL 600.2546 and MCL 600.2549. Plaintiff also sought additional costs for certified updated medical records for Michigan Orthopedic Institute under the same statute. Finally, plaintiff sought costs for certified updated medical records and x-rays for Dr. Sadowski and for Beaumont Hospital pursuant to the same statutes. MCL 600.2546 provides:

> Except as otherwise provided by law, in the circuit court, district court, or probate court, for all certified copies, and exemplifications of records, pleadings and proceedings furnished on request, where no special provision is otherwise made, the fee is $10.00 plus $1.00 per page.

There is no indication in the record that certified medical records were filed in the clerk's office or were "necessarily used" at trial. Therefore, the court erred in taxing these costs pursuant to MCL 600.2549.

Because the trial court erred in assessing certain costs as discussed above, we vacate the portion of the amended judgment assessing $8,489.96 in costs, and remand the case to the trial court in order to recalculate taxable costs consistent with this opinion. The court shall make findings on the record with regard to whether each remaining category of expenses constitutes a taxable cost.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Peter D. O'Connell
/s/ Michael J. Riordan