ALBRO v DRAYER

Docket No. 309591. Submitted November 14, 2013, at Lansing. Decided January 28, 2014, at 9:05 a.m.

Lisa Albro brought an action in the Ingham Circuit Court against Steven L. Drayer, M.D., Steven L. Drayer, M.D., PLLC, and Edward W. Sparrow Hospital Association, alleging medical malpractice as a result of surgery performed by Steven Drayer (hereafter defendant). The court, Rosemarie E. Aquilina, J., entered a judgment of no cause of action consistent with the verdict of the jury. Plaintiff appealed, alleging that the court improperly refused to strike, in whole or in part, the testimony of defendant's experts.

The Court of Appeals *held*:

1. A trial court's determination of the qualifications of an expert witness is reviewed on appeal for an abuse of discretion.

2. The trial court did not abuse its discretion by finding that defendant's experts were, at a minimum, sufficiently knowledgeable, trained, or educated to form an expert opinion under MRE 702. None of the considerations under MCL 600.2169(2) required that the experts be excluded. Admission of expert testimony does not depend on an expert's being exactly as knowledgeable as a defendant in a medical malpractice action. Identical experience and expertise is not required between a party and an expert.

3. Plaintiff's objection to defendant's expert's reference to "a third" of the foot and ankle society should have been sustained because there was no factual basis in the record to support the expert's unsupported speculation. The erroneous admission of evidence is not a basis for reversal when, as in this case, allowing the lower court's judgment to stand is not inconsistent with substantial justice. The admission of the evidence was harmless.

Affirmed.

MEDICAL MALPRACTICE — EVIDENCE — EXPERT TESTIMONY.

Admission of expert testimony in a medical malpractice action does not require that an expert be exactly as knowledgeable as a

defendant in the action; identical experience and expertise is not required between a party and an expert.

*Sommers Schwartz, PC* (by *Ramona C. Howard*), for plaintiff.

*Johnson & Wyngaarden, PC* (by *Michael L. VanErp* and *Robert M. Wyngaarden*), for Steven L. Drayer, M.D., and Steven L. Drayer, M.D., PLLC.

Before: WHITBECK, P.J., and WILDER and RONAYNE KRAUSE, JJ.

PER CURIAM. In this medical malpractice action, plaintiff appeals by right a judgment of no cause of action entered by the trial court after a jury trial. Dr. Steven Drayer (hereafter defendant) performed ankle surgery on plaintiff. The surgery ultimately failed and plaintiff underwent further corrective surgeries, none of which to date has returned her ankle to full functionality. The issues at trial were not necessarily factual, but rather concerned whether defendant's actions comported with the applicable standard of care. The jury found for defendant, and this appeal followed. We affirm.

Plaintiff contended that defendant failed to evaluate plaintiff properly before the surgery and consider other treatment options, failed to correctly diagnose plaintiff's real problem with her ankle and to recognize that surgery was unwarranted, and failed to recognize that the "Chrisman-Snook" procedure employed was inappropriate and that a "Broström" procedure would have been superior. Plaintiff also contended that defendant did not perform the Chrisman-Snook procedure correctly and that defendant's postoperative care and management of her infection were inadequate. Defendant did not contest that the Chrisman-Snook procedure was performed and eventually failed and that

plaintiff suffered an infection, but argued that practicing medicine entails "risks and uncertainties" and that "a failed procedure is not malpractice."

Plaintiff's subsequent primary treating physician opined that the performance of the Chrisman-Snook procedure had been inappropriate because plaintiff had not needed surgery in the first place and the Chrisman-Snook procedure was riskier and more invasive than the Broström procedure. However, he testified that other than placing a drill hole too low, defendant had technically performed the procedure correctly. Defendant presented several expert witnesses, all of whom stated that they would have performed a Broström procedure and that they each had little or no personal experience with the Chrisman-Snook procedure. However, they stated that they were familiar with the kinds of techniques used in both procedures and that they were familiar with the Chrisman-Snook procedure even if they did not personally perform it. Defendant's experts opined that defendant's surgery, presurgery workup, and postsurgery care had not been inappropriate despite the fact that the surgery failed and plaintiff suffered a serious infection. The jury found for defendant. Plaintiff's arguments on appeal exclusively pertain to the trial court's refusal to strike defendant's experts' testimony in whole or in part.

A trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo; it is necessarily an abuse of discretion to admit legally inadmissible evidence. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). It has been long established that a trial court's determination of the qualifications of an expert witness is reviewed for an abuse of discretion. *Woodard v Custer*, 476 Mich 545,

557; 719 NW2d 842 (2006); *People v Hawthorne*, 293 Mich 15, 23; 291 NW 205 (1940); *McEwen v Bigelow*, 40 Mich 215, 217 (1879). Plaintiff appears to imply that our review is de novo, which it is not.

Plaintiff first asserts that all three of defendant's experts should have been disqualified because of their lack of familiarity with the specific surgical procedure performed in this case. We disagree.

Admissibility of expert testimony is subject to several limitations, among them whether a witness can be qualified as an expert at all. MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Furthermore, MCL 600.2169(2) provides:

> In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:
>
> (a) The educational and professional training of the expert witness.
>
> (b) The area of specialization of the expert witness.
>
> (c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.
>
> (d) The relevancy of the expert witness's testimony.

Plaintiff generally contends that defendant's experts were unqualified to render an opinion regarding defen-

dant's compliance with the standard of care because they have little or no, or at least no recent, personal experience actually performing the specific surgical procedure defendant performed. There is no dispute that defendant's experts satisfy MCL 600.2169(1), which, in brief, essentially requires the experts to share the defendant's certifications, practice, and specialties.

Plaintiff's argument is valiant but misplaced. "Where the subject of the proffered testimony is far beyond the scope of an individual's expertise—for example, where a party offers an expert in economics to testify about biochemistry—that testimony is *inadmissible* under MRE 702. In such cases, it would be inaccurate to say that the expert's lack of expertise or experience merely relates to the weight of her testimony. An expert who lacks 'knowledge' in the field at issue cannot 'assist the trier of fact.' " *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 789; 685 NW2d 391 (2004). However, "in some circumstances, an expert's qualifications pertain to weight rather than to the admissibility of the expert's opinion." *Id*. at 788-789. Indeed, were it not for the dictates of MCL 600.2169(1), formal qualifications may not even be technically required as long as the proffered witness can establish actual expertise on a topic. See *Hawthorne*, 293 Mich at 23-25. In general, " '[g]aps or weaknesses in the witness' expertise are a fit subject for cross-examination, and go to the weight of his testimony, not its admissibility.' " *Wischmeyer v Schanz*, 449 Mich 469, 480; 536 NW2d 760 (1995), quoting *People v Gambrell*, 429 Mich 401, 408; 415 NW2d 202 (1987).

Clearly, none of defendant's experts were *as* familiar with the Chrisman-Snook procedure as was defendant. However, all of defendant's experts performed ankle reconstructions regularly and were experts in doing so.

Significantly, though not performing it, *all of them were familiar with the Chrisman-Snook procedure*. All of them had, in addition, either authored at least one article or textbook or lectured on ankle reconstruction and had discussed the Chrisman-Snook procedure in the process. Ankle reconstructive surgeries of any sort were clearly within the general ambit of defendant's experts' fields of expertise. See *Gilbert*, 470 Mich at 789. There was no evidence that the state of the art has changed significantly since any of the experts learned or last performed the Chrisman-Snook procedure, in contrast to the situation in *Swanek v Hutzel Hosp*, 115 Mich App 254, 258; 320 NW2d 234 (1982).[1] Admission of expert testimony simply does not depend on an expert's being *exactly as knowledgeable* as a defendant in a medical malpractice action. The trial court did not abuse its discretion by finding that defendant's experts were, at a minimum, sufficiently knowledgeable, trained, or educated to form an expert opinion under MRE 702. Likewise, none of the considerations under MCL 600.2169(2) demand that the experts be excluded.

We can find no rule, statute, or binding authority requiring identical experience and expertise between a party and an expert, and we decline plaintiff's implicit

---

[1] In *Swanek*, this Court declined to find an abuse of discretion in the trial court's decision not to qualify a doctor as an expert in the standard of care applicable to obstetrician-gynecologists in 1972, when the alleged medical malpractice occurred but when the proposed expert doctor had yet to complete his residency training. Significantly, the standard of care in that particular specialty had been undergoing rapid change in 1972. Among the other deficiencies in the proposed expert's demonstrated knowledge, the plaintiffs had failed to show that he knew the standard of care in 1972. In that case, there was a valid reason to require a certain identity of knowledge beyond merely sharing a specialty. As noted, there is no evidence in the record suggesting that ankle reconstructive surgery has undergone any sort of radical development within any relevant time frame.

invitation to create such a rule. Such a rule would eviscerate the ability of almost any party to find an expert in almost any field, and it would not further assist triers of fact.

Plaintiff also argues that the trial court should have sustained an objection to a statement by one of defendant's experts pertaining to the applicable standard of care. The expert stated, in essence, that approximately one-third of either a particular society or a particular class of practitioners[2] would be committing malpractice if performing the Chrisman-Snook procedure constituted a violation of the standard of care.

Pursuant to MCL 600.2912a(1)(b), the standard of care required of a specialist is "the recognized standard of practice or care within that specialty as reasonably applied in light of the facilities available in the community or other facilities reasonably available under the circumstances . . . ." M Civ JI 30.01 essentially defines the standard of care as "what the ordinary [Name profession.] of ordinary learning, judgment or skill would do or would not do under the same or similar circumstances." It is readily apparent from reading the *entirety* of the expert's relevant testimony that he was of the view that the two surgical procedures in question both had their benefits and drawbacks, but ultimately the best procedure for a patient was usually the procedure that the physician was best at performing. The statutory and jury-instruction definitions are not inconsistent with the expert's explanation that a competent

---

[2] The expert made a reference to what was written in the transcript as "the Foot & Ankle Society." It is not clear whether the capitalization in the transcript should be taken as a reference to the existence of a formal organization by that name or whether the expert was speaking more generally and the transcriptionist simply capitalized certain words because doing so seemed appropriate. It is not necessary for us to resolve this ambiguity.

orthopedic surgeon would perform the surgery with which he or she was the most comfortable, because there existed no good evidence that one procedure was inherently better than the other. It is equally apparent that the expert had reviewed textbooks and was familiar with what generally was being done by other surgeons within his own specialty. We find no error in this regard.

Plaintiff's complaint about the expert's reference to "the Foot & Ankle Society" and "a third" thereof has merit, because the expert did not explicitly articulate how he came to know that particular figure. It is clear from the context within which the statement was made that the expert was familiar with the community, however, the "a third" comment represented a crude approximation and there was an objection regarding the foundation for such a statement. That objection should have been sustained because the admission of the expert's estimate lacked any factual basis in the record and the statement was not shown to be anything more than unsupported speculation. Furthermore, the number of surgeons who use any particular procedure is not determinative of the standard of care. See *Marietta v Cliffs Ridge, Inc*, 385 Mich 364, 369-370; 189 NW2d 208 (1971). The reference to "a third" should have been stricken. However, the erroneous admission of evidence is not a basis for reversal unless allowing the lower court's judgment to stand would be "inconsistent with substantial justice." MCR 2.613(A). On the basis of a review of the entire record, we conclude that the isolated reference was fairly obvious hyperbole and functionally cumulative of the defense experts' uniform testimony that the Chrisman-Snook procedure was neither obsolete nor obscure. Therefore, its admission was harmless. *Detroit/Wayne Co*

*Stadium Auth v Drinkwater, Taylor & Merrill, Inc,*
267 Mich App 625, 652; 705 NW2d 549 (2005).

Affirmed.

WHITBECK, P.J., and WILDER and RONAYNE KRAUSE, JJ.,
concurred.