*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ESTATE OF CALVIN SIMMONS, by VICTOR
PAYNE, Personal Representative,

UNPUBLISHED
March 28, 2019

Plaintiff-Appellant,

v

No. 340456
Wayne Circuit Court
LC No. 15-016609-NF

AUTO CLUB INSURANCE ASSOCIATION,

Defendant-Appellee.

Before: SHAPIRO, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Calvin Simmons brought this action against defendant to recover no-fault benefits and died while the suit was pending. His estate (plaintiff) now appeals the trial court's order granting defendant summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm the dismissal of plaintiff's claims regarding benefits for services provided on or after January 1, 2015.[1]

I.

Before the accident, Simmons lived independently, walked without assistance, drove his car and did not require any assistance with activities of daily living. He maintained this high level of independence despite diagnoses of diabetes, glaucoma, renal failure and coronary artery

---

[1] A trial court's decision to grant summary disposition is reviewed de novo. *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). The party moving for summary disposition under MCR 2.116(C)(10) "has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The nonmoving party then has the burden to present evidence establishing that a material factual dispute exists. *Id*. at 362-363.

disease. There are no records indicating a need for attendant care at any time prior to the auto accident at issue.

The accident occurred in October 2011, when Simmons was 81 years old. He suffered an intertrochanteric femur fracture of his left hip, an undisputedly severe injury. Simmons had surgery to repair the fracture three days later, and he remained hospitalized for one month. He was initially transferred to Oakwood Commons Rehabilitation and Skilled Nursing Center for rehabilitation and care, and then later transferred to the rehabilitation center at Henry Ford Village. He was primarily treated for his injuries by Dr. Douglas Plagens, an orthopedic surgeon, and Dr. Parmod Mukhi, a specialist in physical medicine and rehabilitation.

After being transferred to the rehabilitation facility, Simmons began physical therapy. The goal of treatment was identified as transfer from the rehabilitation center to an assisted-living facility and eventually a return home. However, Simmons developed an ulcer on his left foot due to immobility, which his physicians related directly to his hip fracture. The ulcer persisted for years, caused Simmons severe pain and affected his rehabilitation given that he needed to avoid pressure on the foot. A CT scan also revealed that the fracture had resulted in some permanent anatomical changes and that he would be unable to return to walking without assistance from a walker or cane. According to the medical records, Simmons's recovery was slow and complicated by his co-morbidities. As of July 2013, he was able to walk only 50-100 feet with a walker and only with standby assistance. The records of that time also state that Simmons remained dependent on others for transfers to and from his wheelchair.

Around this time, the case manager hired by defendant, Teresa LaRosa of TLR Rehabilitation Consultants, began inquiring as to the long-term plan for Simmons and whether his ongoing treatment was related to the accident. At the case manager's request, in June 2014 Dr. Mukhi wrote a letter providing that Simmons was improving but that he still required assistance with daily activities and mobility. Dr. Mukhi recommended that Simmons be transferred to an assisted living facility. Although Dr. Mukhi began his letter by stating that he had been seeing Simmons "for quite some time for rehabilitation, s/p MVA [i.e., status post motor vehicle accident]," the case manager thought it was unclear whether Simmons's ongoing medical care was related to the accident. Dr. Mukhi then provided another letter recommending that Simmons remain in 24-hour care "to facilitate further improvement with his wound issues, mobility and [activities of daily living] secondary to the MVA . . . ."

In December 2014, Simmons was hospitalized with respiratory failure and a possible heart attack. He underwent cardiac catheterization and was placed on mechanical ventilation for some time. In January 2015, he was discharged from the hospital in "fair" condition back to Henry Ford Village.

In August 2015, Dr. William Gonte conducted a record review on behalf of defendant. He did not meet or examine Simmons. Dr. Gonte concluded that Simmons no longer required assisted living services due to his hip fracture and his continued care in an assisted living facility was solely the result of his other medical conditions. In September 2015, based on Dr. Gonte's opinion, defendant refused to provide no-fault benefits to Simmons for medical care incurred after January 1, 2015.

II.

In December 2015, Simmons sued defendant for unpaid personal protection insurance (PIP) benefits. Simmons died in November 2016 and the lawsuit continued with Victor Payne serving as the personal representative of Simmons's estate. In March 2017, Dr. Gonte performed another, more complete record review, but still concluded that Simmons's medical care after January 1, 2015, was unrelated to the accident, and resulted from his other co-morbidities.

In April 2017, defendant moved the trial court for summary disposition, arguing that the care Simmons received after January 1, 2015 was unrelated to the left hip fracture he suffered in the October 2011 accident. Defendant provided an affidavit from Dr. Gonte, along with his reports. In response, plaintiff contended that a genuine issue of material fact existed as to whether Simmons's care after 2014 was causally related to the accident. Plaintiff relied on Simmons's medical records, the case manager's progress reports and Dr. Mukhi's letters, amongst other documents. Defendant responded that plaintiff was relying solely on unsworn letters, statements, and reports, which were all inadmissible hearsay and were not sufficient to create a genuine issue of material fact as to the causation. After hearing oral argument, the trial court granted defendant summary disposition, ruling that plaintiff was relying only on inadmissible "unsworn statements and letters" and therefore had failed to create a material factual dispute.

III.

A.

As an initial matter, we conclude that the trial court erred in determining that plaintiff's proffered evidence was inadmissible and could not be considered for purposes of summary disposition solely because plaintiff did not present the evidence as sworn affidavits.[2]

MCR 2.116(G)(6) provides, "Affidavits, depositions, admissions, and documentary evidence offered in support of or in opposition to a motion based on subrule (C)(1)—(7) or (10) shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." Thus, "[t]he reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the *substantively* admissible evidence actually proffered in opposition to the motion." *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999) (emphasis added). Stated differently, "while a motion for summary disposition must be supported by admissible evidence, that evidence does not have to be in admissible form." *Latits v Phillips*, 298 Mich App 109, 113; 826 NW2d 190 (2012) (quotation marks and citation omitted). For example, in *Latits* this Court rejected the argument that "factual statements from police reports" could not be considered for purposes of summary disposition for two reasons. *Id.* First, this Court determined that the

---

[2] "A trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo . . . ." *Albro v Drayer*, 303 Mich App 758, 760; 846 NW2d 70 (2014).

substance of the police reports was admissible because the officers could testify to their observations at trial in that case:

> [D]efendant's reliance on those reports was in reference to the officers' personal observations, and those officers could have testified at trial to the substance of the material in the reports. That evidence would be admissible. [*Id*. at 113-114.]

Second, this Court noted that the police reports themselves were arguably admissible under the hearsay[3] exceptions for records of regularly conducted activity, MRE 803(6), and for public records and reports, MRE 803(8). *Id*. at 114.

In this case, the trial court's focus on plaintiff's failure to produce sworn statements was misplaced because in reviewing motions for summary dispositions courts are to consider "*all documentary evidence* and accept the complaint as factually accurate unless affidavits or other documents presented specifically contradict it." *Shay v Aldrich*, 487 Mich 648, 658; 790 NW2d 629 (2010) (emphasis added). Plaintiff produced substantial documentary evidence in this case, namely medical records and the case manager's progress reports. Absent a challenge to authenticity, we are unaware of any caselaw holding that medical records and doctors' notes may not be considered for purposes of a summary disposition motion. To the contrary, medical records are generally admissible under the hearsay exception for records of regularly conducted activity, MRE 803(6).[4] See *Merrow v Bofferding*, 458 Mich 696, 700; 581 NW2d 696 (1998). Further, the statements made by defendant's case manager and claims adjuster were admissions by a party-opponent under the facts of this case. See MRE 801(d)(2). Thus, in addition to being legitimate documentary evidence for summary dispositions purposes, many of the records submitted by plaintiff appear to be in admissible form for trial.

To the extent that any of the documentary evidence was not in admissible form, however, the trial court was still required to consider whether the substance of that evidence could be presented at trial. Defendant takes particular issue with plaintiff's reliance on Dr. Murki's letters. We see no reason not to treat those letters as medical records. They were written well before litigation ensued and in response to defendant's request for the doctor's medical opinion. In any event, Dr. Murki was listed as a witness in this case and was capable of testifying to his medical opinion, as expressed in the letters, at trial. *Latits*, 298 Mich App at 114. Therefore, the

---

[3] Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay is not admissible except as provided by these rules." MRE 802.

[4] The medical records contained statements and reports by Simmons to his physicians which themselves constitute hearsay. However, because these statements were made by Simmons to his physicians in the course of treatment, they are substantively admissible at trial through MRE 803(4).

letters presented substantively admissible evidence even if the letters themselves would ultimately have been inadmissible.[5]

In sum, we emphasize that MCR 2.116(G)(6) allows a party to oppose summary disposition on the basis of "documentary evidence" and therefore a failure to produce affidavits or deposition testimony is not necessarily fatal to a nonmoving party. The trial court erred by failing to consider the evidence separately and whether the substance of the evidence would be admissible at trial even if it was not currently in an admissible form.

B.

Plaintiff's proffered evidence established a question of fact as to benefits for services through the end of 2014. However, we affirm the trial court's conclusion that plaintiff failed to present proofs sufficient to establish a genuine issue of material fact as to whether Simmons's medical expenses incurred after 2014 were causally related to the accident.[6]

Under the no-fault act, MCL 500.3101 *et seq.*, an insurer "is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." MCL 500.3105(1). "Accordingly, a no-fault insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident." *Griffith ex rel Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 531; 697 NW2d 895 (2005). PIP benefits include "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation . . . ." MCL 500.3107(1)(a). Thus, an insurer is liable to pay charges for care, recovery, and rehabilitation that are "related to the insured's injuries" arising out of the automobile accident. See *Griffith ex rel Griffith*, 472 Mich at 531.

The medical records pre-dating Simmons's medical crisis in December 2014 establish a question of fact about the reasons that he required assisted living services during that period. It was the hip fracture that initially required his admission to assisted living and the resulting lack of mobility was, at least in part, the reason that continued assisted living care was required as demonstrated by the records through the end of 2014. However, as to services after 2014 we must affirm the grant of summary disposition because the record contains no medical or assisted living records for that time period. We cannot speculate to the content of those records, or Simmons's condition during that period.[7] Given the lack of post-2014 evidence of Simmons's

---

[5] The letters could also be used as impeachment evidence if the case manager testified that Dr. Mukhi was uncooperative or that his opinion did not support plaintiff's claim.

[6] We can affirm the trial court when it reaches the right result for the wrong reason. *Gleason v Michigan Dep't of Transp*, 256 Mich 1, 3; 662 NW2d 822 (2003).

[7] Indeed, the only evidence for the period after 2014 is Dr. Gonte's report, in which he opines that the services are no longer required for the hip fracture.

status, we affirm the trial court's dismissal of the action for benefits for January 1, 2015 and thereafter.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Jane M. Beckering
/s/ Michael J. Kelly