*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TAD ROBERTS,

Plaintiff-Appellant,

v

BRONSON HEALTHCARE and JOHN
QUERTERMUS, M.D.,

Defendants-Appellees.

UNPUBLISHED
September 19, 2024

No. 366761
Kalamazoo Circuit Court
LC No. 2017-000545-NH

Before: N. P. HOOD, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

In this interlocutory appeal of a medical malpractice action, plaintiff appeals by leave granted[1] the trial court's order granting defendants' motion in limine to not allow plaintiff's gastroenterology expert to testify regarding what a reasonable surgeon would have done in plaintiff's clinical circumstances. Plaintiff asserts that the trial court abused its discretion because his expert was qualified to opine that, had defendant Dr. Quertermus made a referral, a reasonable surgeon would have performed surgery on plaintiff earlier. For the reasons stated in this opinion, we affirm.

## I. BACKGROUND AND PROCEDURAL POSTURE

This appeal stems from plaintiff's assertion that Dr. Quertermus, a gastroenterologist physician, failed to diagnose an obstruction in plaintiff's sigmoid colon and failed to refer him to a surgeon for treatment. According to plaintiff, in 2015 and 2016, he experienced gastrointestinal symptoms, such as abdominal pain, vomiting, and diarrhea, for which he sought treatment from his primary care physician, several hospital emergency departments, and Dr. Quertermus. Dr.

---

[1] *Roberts v Bronson Healthcare*, unpublished order of the Court of Appeals, entered August 22, 2023 (Docket No. 366761).

Quertermus worked in defendant Bronson Healthcare's Office of Gastroenterology and Colorectal Surgery.

The course of events for which plaintiff asserts Dr. Quertermus was medically negligent began on December 28, 2015, when plaintiff presented himself to Bronson Methodist Hospital's Emergency Department with complaints of abdominal pain, constipation, nausea, vomiting, and blood in his vomit and stool. An x-ray taken that day showed results consistent with "multiple dilated large bowel and a small loop of dilated small bowel." Plaintiff also underwent a CT scan, which showed "thickening" in the sigmoid colon "suggesting at least a mild degree of large bowel obstruction over the long-term with slowed stool transit." Plaintiff was placed on ciprofloxacin and Flagyl and referred to a gastroenterologist.

On January 28, 2016, plaintiff followed up with his primary care physician, complaining of recurring abdominal pain and unexplained weight loss. A CT scan performed on February 11, 2016, showed "[m]oderate thickening and enhancement of [the] mid sigmoid colon with adjacent fat stranding," which was suggestive of inflammatory bowel disease, such as Crohn's disease. The findings also listed "[p]ossible stricture in the mid sigmoid colon and ileal bowel loops."

On February 22, 2016, Dr. Quertermus saw plaintiff for rectal bleeding and an abnormal colon. Dr. Quertermus performed an esophagogastroduodenoscopy[2] (EGD) test. During the EGD, Dr. Quertermus advanced a scope 50 centimeters into plaintiff's colon and observed that the "mucosa was edematous but was not friable" and noted the presence of "no ulcerations or erosions." After the EGD, Dr. Quertermus advised plaintiff to take omeprazole and a laxative and to follow up in four weeks. Plaintiff visited his primary care physician again on March 14, 2016, for abdominal pain, weight loss, vomiting, and diarrhea.

On May 2, 2016, plaintiff presented to the Borgess Emergency Department with complaints of continuing abdominal pain and vomiting. A CT scan performed that day showed "[w]orsening mural thickening and adjacent fat stranding of [the] mid sigmoid, worrisome for obstructive lesion." The next day, plaintiff underwent a sigmoidectomy and colostomy surgical procedure. During the surgery, a mass was found in the sigmoid colon and a portion of the sigmoid was removed. After the surgery, plaintiff continued treatment with his primary care physician but refused to revisit Dr. Quertermus because plaintiff believed that Dr. Quertermus failed to diagnose the sigmoid obstruction. Plaintiff underwent a reverse colostomy on February 1, 2017, and an additional surgery on February 9, 2017, after he developed a postoperative wound infection and popped staples from the closure of the incision site.

Plaintiff filed this medical malpractice action on December 1, 2017. His theory of liability was that Dr. Quertermus failed to render care as a reasonable and prudent gastroenterologist physician when, in light of plaintiff's clinical presentation and the results from the CT scans and

---

[2] An esophagogastroduodenoscopy is a diagnostic endoscopic procedure to examine the upper gastrointestinal tract by placing a camera into the esophagus, stomach, and duodenum. Cleveland Clinic, Esophagogastroduodenoscopy (EGD Test) <https://my.clevelandclinic.org/health/diagnostics/22549-esophagogastroduodenoscopy-egd-test> (accessed July 30, 2024).

EGD test, he failed to diagnose plaintiff with a sigmoid obstruction and failed to refer him to a surgeon. Plaintiff asserted that had Dr. Quertermus referred plaintiff to a surgeon in February 2016, a reasonable and prudent surgeon would have performed surgery shortly thereafter, avoiding unnecessary pain, a colostomy, its reversal, and complications ensuing from those procedures.

In support of his complaint, plaintiff offered Dr. Michael Duffy, a gastroenterologist physician, to opine as an expert that a reasonable and prudent gastroenterologist of average training, experience, and education under the same or similar clinical circumstances would have diagnosed plaintiff and referred him to a surgeon earlier. During his deposition, Dr. Duffy, acknowledged that he is not a surgeon, but opined that given his experience treating patients and referring them to surgeons over many years, a reasonable and prudent surgeon would have performed surgery on plaintiff shortly after the referral.

Defendants moved in limine under MCL 600.2169 and MRE 702 to exclude Dr. Duffy from opining what a surgeon would have done had Dr. Quertermus referred plaintiff in February 2016 on the basis that Dr. Duffy was not a surgeon and was unqualified to testify regarding the standard of care applicable to a surgeon. Plaintiff responded that Dr. Duffy is a respected gastroenterologist with over 40 years' experience, which includes experience on what happens to patients once he refers them to a surgeon. At a hearing, the trial court concluded that Dr. Duffy was qualified to testify about the conduct of a gastroenterologist, but unqualified to testify what a surgeon would have done under MCL 600.2169. Plaintiff moved for reconsideration. The trial court denied the motion because it presented the same issues already addressed by the trial court. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's ruling regarding the qualifications of a proposed expert witness for an abuse of discretion. *Rock v Crocker*, 499 Mich 247, 260; 884 NW2d 227 (2016). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Danhoff v Fahim*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 163120); slip op at 11. "A trial court necessarily abuses its discretion when it makes an error of law." *Id.* (quotation marks and citation omitted). This Court reviews de novo questions of statutory interpretation. *Rock*, 499 Mich at 260.

## III. DISCUSSION

Plaintiff asserts that the trial court abused its discretion by prohibiting his proposed expert from testifying that a reasonable surgeon would have performed surgery earlier had Dr. Quertermus made a referral in February 2016. We disagree because the record demonstrates that Dr. Duffy lacked the requisite qualifications under MCL 600.2169(2) to opine regarding a surgeon's decision to perform surgery.

To prevail in a medical malpractice action, a plaintiff must establish four elements:

(1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the

proximate result of the defendant's breach of the applicable standard of care. [*Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004).]

"[T]he plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants." MCL 600.2912a(2). "Proximate cause is a legal term of art that incorporates both cause in fact and legal (or proximate) cause." *Craig*, 471 Mich at 86 (quotation marks and citation omitted). Cause in fact requires a showing that "but for" defendants' action, plaintiff's injury would not have occurred. *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994). "[A] plaintiff's prima facie case of medical malpractice must draw a causal connection between the defendant's breach of the applicable standard of care and the plaintiff's injuries." *Craig*, 471 Mich at 90. Expert testimony is essential to establish that causal link. *Pennington v Longabaugh*, 271 Mich App 101, 104; 719 NW2d 616 (2006). The proponent of expert testimony in a medical malpractice action bears the burden of proving that his or her expert's testimony is relevant and admissible. *Elher v Misra*, 499 Mich 11, 22; 878 NW2d 790 (2016).

In this case, plaintiff's theory is that Dr. Quertermus breached the standard of care applicable to a gastroenterologist by failing to diagnose plaintiff with a sigmoid obstruction and failing to refer plaintiff to a surgeon in February 2016. Plaintiff posits that, had Dr. Quertermus referred him to a surgeon in February 2016, plaintiff would have had surgery earlier and avoided additional pain, the colostomy, and the additional surgeries to reverse the colostomy and treat complications arising from the reversal.

A central premise of plaintiff's theory of causation is that had a reasonable surgeon been informed of plaintiff's condition in February 2016, the surgeon would have performed the surgery earlier. Accordingly, this case is a "failure to refer" case premised on the consequences of delayed surgery. Plaintiff's theory of "but for" causation requires evidence regarding what a reasonable surgeon would have done had Dr. Quertermus made a referral in February 2016. See *Skinner*, 445 Mich at 163. Given this chain of causation, plaintiff needed to offer expert testimony opining the necessity of performing surgery earlier than May 2016. Plaintiff potentially could have established this evidence through the testimony of the surgeon who performed his eventual surgery or an uninvolved qualified expert.

Plaintiff offered Dr. Duffy as his sole medical expert. Dr. Duffy is a board-certified internal medicine and gastroenterologist physician. He shares the same specialty as Dr. Quertermus. The trial court concluded that Dr. Duffy was qualified to opine regarding Dr. Quertermus's conduct as a gastroenterologist; however, the trial court prohibited Dr. Duffy from opining what a surgeon would have done had Dr. Quertermus made a surgical referral.

Plaintiff argues that the trial court abused its discretion because Dr. Duffy's testimony did not address the standard of care applicable to a surgeon and instead constituted only causation testimony. Although framed as a link in plaintiff's theory of causation, Dr. Duffy's testimony necessarily encompassed the standard of care applicable to a surgeon. Dr. Duffy sought to explain how a reasonable and prudent surgeon would have responded to receiving a referral from Dr. Quertermus. See *Locke v Pachtman*, 446 Mich 216, 225; 521 NW2d 786 (1994) ("Standard of care" testimony applicable to a surgeon encompasses "what a reasonably prudent surgeon would do, in keeping with the standards of professional practice" in that case).

-4-

Expert testimony in a medical malpractice action is subject to MCL 600.2169. When a party to the action is a specialist providing "standard of practice or care" testimony, MCL 600.2169(1)(a) requires that the expert have "the same specialty as the party against whom or on whose behalf the testimony is offered." Although expert testimony regarding surgery is required in this case, no surgeon is a party to this action. Accordingly, MCL 600.2169(1) is inapplicable to the testimony at issue.

Even though MCL 600.2169(1) is inapplicable, all expert testimony in a medical malpractice action is still subject to the requirements in MCL 600.2169(2), which provides:

> In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:
>
> (a) The educational and professional training of the expert witness.
>
> (b) The area of specialization of the expert witness.
>
> (c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.
>
> (d) The relevancy of the expert witness's testimony.[3]

Unlike Subsection 2169(1), Subsection 2169(2) is not limited to "standard of practice or care" testimony. Rather, the subsection applies to any expert testifying about any issue that requires expert testimony in a medical malpractice action. *Halloran v Bhan*, 470 Mich 572, 578 n 6; 683 NW2d 129 (2004) ("MCL 600.2169(2), however, deals with any expert witness, while MCL 600.2169(1) deals only with expert witnesses regarding the standard of care. Expert testimony may encompass many subjects that do not involve the standard of care, such as causation.").

Plaintiff generally argues that Dr. Duffy was qualified to testify about the necessity of earlier surgery because of his training, experience, and interactions with surgeons over 40 years. However, nothing in Dr. Duffy's affidavit or otherwise in the record suggests that he has experience or training in surgery. In fact, Dr. Duffy himself repeatedly acknowledged that he is not a surgeon and has no surgical training. Dr. Duffy also indicated the decision to perform an elective gastroenterological surgery requires consideration of various factors unrelated to the field of gastroenterology.

Dr. Duffy's lack of qualifications to opine on this subject was demonstrated by the inconsistent testimony he offered during his deposition. When asked if he could testify regarding the standard of care applicable to a surgeon, Dr. Duffy stated "I really can't render a standard of care opinion for a surgeon" and "I could not really comment on what a surgeon should do or what the standard of care would require him to do in that circumstance." Later in the deposition Dr. Duffy changed his answer to state: "Realizing that I am not a surgeon, but I deal with these

---

[3] MCL 600.2169(3) further provides: "This section does not limit the power of the trial court to disqualify an expert witness on grounds other than the qualifications set forth in this section."

problems, I do refer patients to surgeons with this type of issue. I can't say that a surgeon would necessarily have operated on him, but I would think that a reasonable surgeon probably would have." Additionally, when asked if plaintiff would have undergone surgery if he had been referred to a surgeon, Dr. Duffy initially answered, "It's speculation." After follow-up questions, he answered affirmatively that plaintiff would have undergone surgery earlier.

Moreover, Dr. Duffy demonstrated a lack of knowledge regarding the details of a surgeon's decision-making process. When asked about the risks of abdominal surgery or sigmoid obstruction surgery, Dr. Duffy answered that he would "defer to a surgeon for that." Further, Dr. Duffy could not provide an answer when asked what percentage of patients with chronic sigmoid obstruction require surgery. The internal inconsistencies in his testimony and inability to answer questions about the decision to perform surgery demonstrate that Dr. Duffy did not have the requisite knowledge to opine what a reasonable surgeon would have done in this case.

The motion granted by the trial court, which is at issue in this appeal, is not a motion for summary disposition nor is it an appeal of an order which completely barred Dr. Duffy from testifying. Rather, our review is limited to review of the trial court's decision to exclude the testimony of Dr. Duffy regarding what a reasonable surgeon would have done in this case. Plaintiff bore the burden of establishing Dr. Duffy's qualifications on the subject and failed to do so. See *Elher*, 499 Mich at 22. The trial court did not abuse its discretion when it concluded that Dr. Duffy could not opine what a reasonable and prudent surgeon would have done in plaintiff's clinical circumstances.

Finally, premised on the notion that Dr. Duffy's experience meets the minimum requirements of MCL 600.2169(2), plaintiff posits that questions regarding the sufficiency of Dr. Duffy's qualifications are a jury question that go to the weight and credibility of his testimony rather than a threshold determination for the trial court to make. Indeed, there are instances in which "an expert's qualifications pertain to weight rather than to the admissibility of the expert's opinion." *Gilbert v DaimlerChysler Corp*, 470 Mich 749, 788; 685 NW2d 391 (2004). In those circumstances, "[g]aps or weaknesses in the witness' expertise are a fit subject for cross-examination . . . ." *Wischmeyer v Schanz*, 449 Mich 469, 480; 536 NW2d 760 (1995). Moreover, as plaintiff notes, "[a]dmission of expert testimony simply does not depend on an expert's being *exactly as knowledgeable* as a defendant in a medical malpractice action." *Albro v Drayer*, 303 Mich App 758, 763; 846 NW2d 70 (2014). However, the question in this case is not whether a qualified expert is as knowledgeable as a surgeon. The question was the threshold inquiry of whether Dr. Duffy was minimally qualified. The trial court has a duty to act as a gatekeeper under MRE 702. Consistent with that role, the trial court was obligated to consider whether Dr. Duffy was minimally qualified under MCL 600.2169. The trial court determined that Dr. Duffy was not

minimally qualified.[4]  We conclude, on the record before us, the decision of the trial court was not an abuse of discretion.

Affirmed.

/s/ Noah P. Hood
/s/ Colleen A. O'Brien
/s/ James Robert Redford

---

[4] We decline to address defendants' alternative grounds for affirming the trial court's ruling.