*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WANDA HICKS,

      Plaintiff-Appellant,

v

HERMAN RUIZ and REHABILITATION
PHYSICIANS, PLC, doing business as MICHIGAN
SPINE & PAIN,

      Defendants-Appellees.

UNPUBLISHED
December 10, 2025
11:29 AM

No. 374608
Isabella Circuit Court
LC No. 23-018724-NH

Before: KOROBKIN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff, Wanda Hicks, appeals by right the trial court's order granting summary disposition in favor of defendants, Dr. Herman Ruiz and Rehabilitation Physicians, PLC, doing business as Michigan Spine and Pain, under MCR 2.116(C)(10) (no genuine issue of material fact). On appeal, plaintiff contends that the trial court abused its discretion by concluding that her sole expert witness was not qualified to testify about the requisite standard of care. For the reasons set forth in this opinion, we agree, and therefore reverse.

## I. BACKGROUND AND FACTS

In April 2021, Dr. Ruiz performed a cervical epidural injection with fluoroscopic approach on plaintiff. After the procedure, plaintiff immediately complained of pain, which Dr. Ruiz assured her was not uncommon. Plaintiff continued to complain of pain, so Dr. Ruiz checked her vitals, which were normal, and told her that she could leave. Plaintiff testified that she drove home from the appointment still in pain and that she called Dr. Ruiz's office again and later 911 when she collapsed at home after losing feeling and movement in her left arm and both legs. Plaintiff

-1-

was then hospitalized and diagnosed with a cervical epidural hematoma,[1] requiring emergency surgery the next morning.

In June 2023, plaintiff initiated this medical malpractice action arising from the April 2021 procedure and subsequent surgery, claiming that Dr. Ruiz breached the requisite standard of care in several ways: by failing to provide plaintiff with reasonable care, by failing to "skillfully place" the surgical tool thereby injuring plaintiff, by failing to respond appropriately to plaintiff's complaints of pain following the procedure, and by failing to maintain accurate medical records including complications and plaintiff's. Plaintiff attached an affidavit of merit from Dr. Stanley J. Mathew, who, like Dr. Ruiz, is a board-certified physician in both pain medicine and in physical medicine and rehabilitation. Defendants subsequently filed an affidavit of meritorious defense from a physician who stated that "the applicable standard of practice or care is that of a board certified physical medicine and rehabilitation physician," and that based on his review of the medical records Dr. Ruiz's treatment of plaintiff complied with the standard of care.

Plaintiff, Dr. Ruiz, and plaintiff's expert Dr. Mathew were all deposed during discovery. Plaintiff's deposition testimony differs from Dr. Ruiz's regarding certain details. In particular, plaintiff testified that she told Dr. Ruiz she was experiencing "horrible severe pain" and that she told him the pain was radiating down her left arm, whereas Dr. Ruiz denied that she had described her pain in that way. In fact, Dr. Ruiz testified, had plaintiff told her about the pain in her arm, he would have considered sending her to the emergency room rather than telling her she could go home. Dr. Ruiz testified that plaintiff in fact reported that her pain had significantly decreased. He also testified that he told plaintiff that he could order an MRI but that she declined.

At Dr. Mathew's deposition, he testified that he had been practicing medicine for over 15 years and that he is board-certified in physical medicine and rehabilitation as well as pain medicine, maintaining those certifications by completing continuing medical education every three to six months. Regarding his experience with the particular procedure at issue—fluoroscopic-guided cervical epidural steroid injections—Dr. Mathew testified that he had not personally performed that procedure within the last ten years, but that he is trained to do them, has performed them in the past, is "very familiar" with them, and has worked with hundreds of providers who do them regularly, including colleagues in his own practice. Dr. Mathew explained that he regularly did "tons of injection therapies," "just not those specifically" because he refers them to other physicians in his practice, but that he works "very closely" with those physicians, discusses patients with them daily, and has treated thousands of patients who had such injections.

Dr. Mathew described a cervical epidural hematoma as a rare but potentially catastrophic event characterized by bleeding that compresses the spinal cord. Regarding Dr. Ruiz's response to plaintiff's complaints of pain, Dr. Mathew testified that "if someone was having this much pain after an injection, some sort of follow-up imaging should have been performed immediately to

---

[1] A spinal epidural hematoma is a collection of blood in the space around the spine that can compress the spinal cord. See New York School of Regional Anesthesia, *Diagnosis and Management of Spinal and Peripheral Nerve Hematoma* <https://www.nysora.com/topics/complications/diagnosis-management-spinal-peripheral-nerve-hematoma/> (accessed December 9, 2025).

make sure that there wasn't some sort of bleed that had occurred," and plaintiff "should not have been allowed to go home." Dr. Mathew further testified that his opinion was based on his review of plaintiff's medical records, her deposition testimony, and his experience and training. When asked if he could cite any medical literature to support his opinions, he said, "Today, no."

Defendants moved for summary disposition under MCR 2.116(C)(10), contending, *inter alia*, that Dr. Mathew was not qualified to testify about the standard of care for the procedure under MCL 600.2169(2), which governs medical expert qualifications in medical malpractice actions, because he had not performed the relevant procedure in over a decade and did not cite any published literature in support of his opinions. Plaintiff responded that MCL 600.2169(2) did not require that Dr. Mathew have recently completed the type of procedure at issue and that his education and professional training sufficiently qualified him to testify as an expert about the standard of care in this case.

At the hearing on defendants' motion, the parties informed the court that they had agreed to narrow the issues to one claim of malpractice, limited to noneconomic damages, regarding plaintiff's allegation that Dr. Ruiz improperly responded to her complaints of pain after the procedure. In other words, plaintiff had dropped her allegations that Dr. Ruiz had committed malpractice with regard to the procedure itself; it was now only his response to her post-procedure complaints of pain that was at issue. A stipulated order to that effect was entered the next day.

Following the hearing, the trial court granted defendants' motion for summary disposition, concluding in a written opinion and order that Dr. Mathew was not qualified to testify as an expert. In support of its conclusion, the trial court pointed to Dr. Mathew's testimony that he had not performed a spinal epidural injection or any procedure involving fluoroscopy in over a decade and Dr. Mathew's failure to "identify any published literature to support his opinions." The trial court reasoned as follows:

> Dr. Matthew[2] seeks to offer an opinion regarding the way Dr. Ruiz handled plaintiff's alleged post-operative complaints of pain. However, if Dr. Matthew is not performing these procedures and not treating these patients, he does not have a basis on which to form an opinion regarding what a normal post-operative complaint is. There is no literature that Dr. Matthew has relied on to form his opinions. Instead, he has based his opinions solely on his experience, which is lacking.
>
> It does not appear that Dr. Matthew is qualified to testify . . . .

The trial court consequently granted defendants' motion for summary disposition because, with Dr. Mathew's testimony excluded, plaintiff failed to proffer "sufficient admissible expert testimony to establish a genuine issue of material fact."

---

[2] The trial court's spelling of the expert's name differed from the spelling used by the parties and in Dr. Mathew's curriculum vitae and affidavit of merit.

Plaintiff now appeals.

## II. STANDARDS OF REVIEW

"We review a trial court's rulings concerning the qualifications of proposed expert witnesses to testify for an abuse of discretion. An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Stokes v Swofford*, 514 Mich 423, 441; 22 NW3d 97 (2024) (citation omitted). We have further described our review as follows:

> Although trial courts have considerable discretion in determining whether a witness is qualified to testify as an expert, trial courts must nevertheless accurately apply the law in exercising their discretion. They may not, for example, apply an overly narrow test of qualifications in order to preclude a witness from testifying as an expert. And this Court reviews de novo whether the trial court correctly selected, interpreted, and applied the law. Moreover, when a trial court admits or excludes evidence on the basis of an erroneous interpretation or application of law, it necessarily abuses its discretion. [*Gay v Select Specialty Hosp*, 295 Mich App 284, 291-292; 813 NW2d 354 (2012) (quotation marks and citations omitted).]

With regard to orders granting or denying summary disposition, our review is de novo. *Danhoff v Fahim*, 513 Mich 427, 441; 15 NW3d 262 (2024). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020) (quotation marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks and citation omitted).

## III. ANALYSIS

Plaintiff contends that the trial court abused its discretion by excluding Dr. Mathew as an expert witness and, thus, erred by granting summary disposition in favor of defendants. We agree.

To prevail in a medical malpractice action, a plaintiff must establish four elements:

> (1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care. [*Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004).]

"The standard of care is controlled by how other physicians in a field of medicine would act when providing the same treatment." *Stokes*, 514 Mich at 432 (footnote omitted). "Expert testimony is required to establish the applicable standard of care and a breach of that standard." *Id*.

-4-

The proponent of expert testimony in a medical malpractice action bears the burden of proving that the testimony is relevant and admissible. *Elher v Misra*, 499 Mich 11, 22; 878 NW2d 790 (2016). To do so, the proponent must show that the witness is knowledgeable regarding the applicable standard of care. *Decker v Rochowiak*, 287 Mich App 666, 685; 791 NW2d 507 (2010). "[K]nowledge connotes more than subjective belief or unsupported speculation." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 781; 685 NW2d 391 (2004) (quotation marks and citation omitted). And "there must be facts in evidence to support the opinion testimony of an expert." *Teal v Prasad*, 283 Mich App 384, 395; 772 NW2d 57 (2009) (quotation marks and citation omitted). Toward these ends, a plaintiff must satisfy the court that their expert is qualified under MRE 702, MCL 600.2169, and MCL 600.2955. *Danhoff*, 513 Mich at 442-443, citing *Elher*, 499 Mich at 22.

Under MRE 702, all expert testimony must be sufficiently reliable to be admitted into evidence. *Gilbert*, 470 Mich at 780; *Danhoff*, 513 Mich at 445. MRE 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"Where the subject of the proffered testimony is far beyond the scope of an individual's expertise—for example, where a party offers an expert in economics to testify about biochemistry—that testimony is inadmissible under MRE 702." *Albro v Drayer*, 303 Mich App 758, 762; 846 NW2d 70 (2014) (quotation marks and citation omitted). Indeed, "[a]n expert who lacks knowledge in the field at issue cannot assist the trier of fact." *Id.* (quotation marks and citation omitted). However, mere "gaps or weaknesses in the witness' expertise are a fit subject for cross-examination, and go to the weight of his testimony, not its admissibility." *Id.* (quotation marks, citation, and alteration omitted).

MCL 600.2169, meanwhile, governs qualifications of expert witnesses specifically in medical malpractice actions. MCL 600.2169(1) generally mandates "matching" between a plaintiff's expert and the defendant in terms of their specialty, board certification, and practice. See generally *Stokes*, 514 Mich 423. And MCL 600.2169(2) provides:

> In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:
>
> (a) The educational and professional training of the expert witness.

(b) The area of specialization of the expert witness.

(c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.

(d) The relevancy of the expert witness's testimony.

Finally, MCL 600.2955(1) "presents a nonexhaustive list of seven factors that a trial court shall consider when it determines whether an expert's opinions are reliable." *Danhoff*, 513 Mich at 453. Those factors are:

(a) Whether the opinion and its basis have been subjected to scientific testing and replication.

(b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation. [MCL 600.2955(1).]

Our Supreme Court has recognized, however, that MCL 600.2955 factors may not be relevant in every medical malpractice case. *Elher*, 499 Mich at 27.

In the present case, there is no dispute that Dr. Mathew satisfies the "matching" requirements of MCL 600.2169(1); he, like Dr. Ruiz, is board-certified in physical medicine and rehabilitation and in pain medicine, and he spent the majority of his time in active clinical practice of those specialties in the year preceding the incident that gave rise to plaintiff's claim. But the trial court held that Dr. Mathew was not qualified because he personally had not performed the specific procedure involved in this case in over ten years and therefore did not have a basis on which to form an opinion about plaintiff's post-procedure complaints.

In our view, the trial court's analysis conflicts with this Court's decision in *Albro v Drayer*, 303 Mich App 758. In that case, the plaintiff brought a claim for medical malpractice related to her ankle surgery and argued that "defendant's experts were unqualified to render an opinion

regarding defendant's compliance with the standard of care because they have little or no, or at least no recent, personal experience actually performing the specific surgical procedure defendant performed." *Albro*, 303 Mich App at 761-762.[3] This Court rejected that argument:

> Clearly, none of defendant's experts were as familiar with the Chrisman-Snook procedure as was defendant. However, all of defendant's experts performed ankle reconstructions regularly and were experts in doing so. Significantly, though not performing it, *all of them were familiar with the Chrisman-Snook procedure*. All of them had, in addition, either authored at least one article or textbook or lectured on ankle reconstruction and had discussed the Chrisman-Snook procedure in the process. Ankle reconstructive surgeries of any sort were clearly within the general ambit of defendant's experts' fields of expertise. There was no evidence that the state of the art has changed significantly since any of the experts learned or last performed the Chrisman-Snook procedure . . . . Admission of expert testimony simply does not depend on an expert's being *exactly as knowledgeable* as a defendant in a medical malpractice action. . . .
>
> We can find no rule, statute, or binding authority requiring identical experience and expertise between a party and an expert, and we decline plaintiff's implicit invitation to create such a rule. Such a rule would eviscerate the ability of almost any party to find an expert in almost any field, and it would not further assist triers of fact. [*Id*. at 762-764 (citation omitted).]

Here, too, Dr. Mathew has less, or at least no recent, personal experience with fluoroscopic-guided epidural steroid injections, the specific procedure that Dr. Ruiz performed. However, his deposition testimony reflects that he regularly performs injection therapies. As for the specific procedure used here, he testified that he is trained to do them, has performed them in the past, is "very familiar" with them, treats "thousands" of patients who have had them, and works "very closely" with colleagues in his own practice who perform the procedure which includes discussing patients with them on a daily basis. Unlike the experts in *Albro*, Dr. Mathew has not authored publications discussing the procedure, but the overall gist of *Albro* is that "gaps or weaknesses in the witness' expertise are a fit subject for cross-examination, and go to the weight of his testimony, not its admissibility." *Id*. at 762 (quotation marks, citations, and alteration omitted). This is not a situation "where the subject of the proffered testimony is far beyond the scope of an individual's expertise—for example, where a party offers an expert in economics to testify about biochemistry." *Id*. (quotation marks and citation omitted). As with the defendant's experts in *Albro*, Dr. Mathew's lack of recent experience personally performing the particular procedure at issue did not render him unqualified to offer an opinion regarding Dr. Ruiz's compliance with the standard of care. This is particularly so given that the limited allegations remaining against Dr. Ruiz focus on the pain plaintiff allegedly experienced and reported after the procedure, and Dr. Mathew testified he has treated "thousands" of patients after they have received this same injection.

---

[3] As in this case, there was no dispute in *Albro* that the defendant's experts satisfied the "matching" requirements in MCL 600.2169(1). *Albro*, 303 Mich App at 762.

The trial court also noted that Dr. Mathew relied on no literature to form his opinions. However, we interpret this statement by the trial court as merely acknowledging the possibility that, in an appropriate case, an expert whose clinical experience was otherwise lacking could form an opinion on the basis of medical literature. We do not interpret the trial court's opinion as asserting a standalone requirement that Dr. Mathew's opinion must be supported by literature, nor do defendants make such an argument on appeal. See *Danhoff*, 513 Mich at 432-433 (reiterating that "scientific literature is not always required to support an expert's standard-of-care opinion, but that scientific literature is one of the factors that a trial court should consider"). Because we conclude on the basis of *Albro* that the trial court erred in excluding Dr. Mathew's testimony, we do not believe that there are independent grounds for excluding it solely because he did not rely on literature.[4]

Our analysis is reinforced by the limited scope of what remained at issue in this case by the time the trial court ruled on defendants' motion for summary disposition. The parties stipulated to dismiss all claims except "Dr. Ruiz's alleged failure to properly address [p]laintiff's alleged complaints, limited to the period of time between the completion of the procedure Dr. Ruiz performed on [p]laintiff and her presentation to the hospital later that day." Therefore, Dr. Mathew's relevant testimony was essentially his opinion that, in response to plaintiff's complaints of severe pain, Dr. Ruiz should have ordered immediate imaging and should not have allowed plaintiff to go home. Notably, Dr. Ruiz himself agreed that, had he understood plaintiff's symptoms in the way she described them in her deposition, he would have considered sending her to the emergency room. And defendants' affidavit of meritorious defense agreed that the standard of care included appropriately monitoring and discharging the patient. Principally, then, the case hinges on a factual dispute; plaintiff has testified that she accurately described in detail to Dr. Ruiz the severity and nature of her symptoms and pain, whereas Dr. Ruiz's testimony and some of the medical records indicate that plaintiff complained to him of pain in more general terms such that the situation was not particularly unusual or a reason for concern.

With the stage set in this way, Dr. Mathew is qualified to offer expert testimony regarding Dr. Ruiz's compliance with the standard of care in response to plaintiff's complaints, assuming that plaintiff's deposition testimony is accurate. Contrary to the trial court's opinion, Dr. Mathew is qualified to form an opinion about what kinds of post-procedure complaints should trigger immediate follow-up care, and sharing that opinion would help the trier of fact determine whether Dr. Ruiz breached the standard of care and caused plaintiff to suffer noneconomic damages during the time in question. *Albro*, 303 Mich App at 762-764; MRE 702; MCL 600.2169(2). Any "gaps

---

[4] In *Elher*, 499 Mich at 28, and *Edry v Adelman*, 486 Mich 634, 640; 786 NW2d 567 (2010), the plaintiffs' experts' testimony was found to be unreliable in part because they did not produce literature supporting their opinion. In those cases, however, the experts' opinions were directly contradicted by published literature and the opinions of the defendants' experts. In our case, no such contrast is apparent from the record, and Dr. Mathew's relevant testimony amounts to little more than the relatively straightforward point that a physician should respond promptly to a patient's complaints of "horrible severe pain."

or weaknesses" in Dr. Mathews' expertise "go to the weight of his testimony, not its admissibility." *Albro*, 303 Mich App at 762 (quotation marks, citations, and alteration omitted).

## IV. CONCLUSION

By "apply[ing] an overly narrow test of qualifications in order to preclude [Dr. Mathew] from testifying as an expert," *Gay*, 295 Mich App at 291 (quotation marks and citation omitted), the trial court misapplied the law and thereby necessarily abused its discretion, *id*. at 292. Consequently, the trial court likewise erred by granting summary deposition on grounds that plaintiff had failed to produce admissible expert testimony to support his claim. *Danhoff*, 513 Mich at 456.

Reversed and remanded for further proceedings consistent with this opinion. Plaintiff, as the prevailing party, may tax costs. MCR 7.219(A). We do not retain jurisdiction.

/s/ Daniel S. Korobkin
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado